BLANCHARD, J.
The city of Alexandria, in its petition, charges the railroad company with trespass upon property belonging to the city, and avers that the trespass consisted in entering upon Front street, in said city, and building constructions thereon without authority, which obstruct passage and transportation over and through the street.
It is set forth that a franchise which had been formerly granted the railroad company to occupy the street with its tracks had been revoked and annulled by action of the mayor and board of aldermen, for the reason that it had not complied with the conditions in consideration of which the grant had been made, which conditions are described to be: —“To keep the street in good order, not to block or obstruct same', to permit free ingress and egress over and through it, and to maintain it at a width of forty feet.”
It is averred that the street, through the acts of the company, had been made impassable by the construction of a high bed of earth crossing the same, on which bed of earth, or ramp, the company proposes to lay tracks across the street.
The prayer of the petition is for an injunction restraining the railroad, or its agents, from building tracks across the street, or from obstructing the street, and for judgment confirming the action of the city authorities in revoking and annulling the railroad franchise, and ordering the company to remove the obstruction placed on the street. The injunction issued.
Defendant company answered denying the trespass charged; denied that it had obstructed transportation or prevented free ingress and egress over and through the street; denied the power of the city authorities to revoke its franchise; and denied that it had not complied with the conditions of the grant to it.
It averred that if at any point the street in question had become of less width than 40 feet it was not through any permission, fault or negligence on its part, but is attributable to the action of the state levee authorities in the location and construction of a large and high levee embankment in, on and through the street lengthwise, and that for this act of the state authorities defendant cannot-be made responsible, nor can such action have the effect of depriving it of its rights under its contract with the city by which it acquired the right of way on and over the street.
It averred the injunction to have been wrongfully sued out, is an unwarranted interference with its rights, has damaged it, etc.; and that it had been further damaged by a trespass committed by the city authorities in tearing up portions of its track on Front street.
It set forth as the basis of its right to enter upon the street the franchise granted it by the town of Alexandria in 1882 and the contract made with the town predicated thereon, and avers that it has, from the date of the grant, constantly used the street in question, and other streets named in the grant, for the purpose specified in the grant, and its right to continue their use is a vested right, from which springs obligations that cannot be impaired without violating the constitution —state and federal.
It represented that the act of the authorities in seeking revocation of its franchise without notice to it, or time to defend, was ultra vires and void, and that such revocation, if upheld, would be a taking of its property without due process of law and in violation of its constitutional rights.
It prayed rejection of the demand of the plaintiff and dissolution of its injunction, with damages in the sum of $11,500, for which it asked judgment in reconvention. Also for judgment recognizing and enforcing its franchise rights on the streets.
*53 The ordinance seeking to revoke and annul the company’s franchise was adopted September 27, 1901, and the city’s petition, herein-before referred to, was filed three days later.
This was followed, two days later, by a countersuit filed by the railroad company. In its petition, in this suit, it set forth at length its rights and claims under its franchise and contract and its case against the city, and prayed recognition of such rights and claims and for judgment declaring void the act of revocation of its franchise as attempted by the city authorities. It also asked for and obtained a writ of injunction against the town authorities prohibiting interference with its constructions, tracks, cars, etc.
The city answered this suit, claiming authority, under the ordinance and contract evidencing the grant of franchise to the railroad, to withdraw and revoke the grant for noncompliance with its terms and conditions.
It claimed, further, that the right to occupy the street in question was nothing more than a license, without money consideration, revocable at the will of the licensor, without notice to the licensee.
But that if it should be held the power of forfeiting the franchise for cause was one vested in the courts and not in the municipal authorities, then it claimed and asked such forfeiture on the ground that the railroad company had violated or failed to comply with the conditions of the grant in certain particulars which are specifically set forth at length, being an elaboration of the same as set up in its petition first filed and heretofore referred to.
It asserted that the fact that the state authorities had located and constructed a levee on and down the street, thus lessening its width, was something for which the city was not responsible, and that no matter how the width of the street may have been lessened under 40 feet, and whether the railroad was responsible for it or not, nevertheless it operated, just the same, a forfeiture of its privileges under the grant.
It claimed that the railroad had not complied with another obligation of the grant, and that was to keep the street in a cleanly condition, well drained and in good order.
It averred that the city had been damaged by the obstruction of its said Front street by the railroad and asked judgment in reconvention for $11,500 as compensation for such damage.
Its further prayer was the same as that set forth in its petition first filed.
The two suits were consolidated and tried together as one.
The city of Alexandria asked trial by jury. This jury, on the issues as made up, returned the following verdict:—
“We the jury find the Morgan’s Louisiana & Texas Railroad & Steamship Company have failed to comply with their franchise, without damages, and hereby annul same, and set aside suit of -Morgan’s Louisiana & Texas Railroad & Steamship Company versus the city of Alexandria, without damages.”
Predicated on this verdict, a judgment was entered up sustaining and making perpetual the injunction sued out by the city; forfeiting and annulling the, railroad company’s entire franchise in the city of Alexandria (not merely its right to enter upon and locate its tracks on Front street); and ordering the company to remove all obstructions it had placed on Front street.
It set aside and dissolved the injunction sued out by the company and condemned the latter to pay the costs of both suits.
The company appeals, and in this court the city prays amendment of the judgment so as to allow it $11,500 damages against the railroad.
Ruling — The railroad obtained its franchise or right of way on certain streets, from the town of Alexandria in the year 1882.
It is not considered that any question is here involved of the authority of the town to grant the franchise, though that question is argued in the brief of its counsel.
The pleadings filed on its behalf recognize the franchise, and the contract between the municipality and the railroad company predicated thereon, and nowhere is it set up that the act of the town in assuming to make the grant was ultra vires.
The town ordinance, making the grant, gives to the company, its successors and assigns, in perpetuity, or so long as it shall use the same for railway purposes, the right of way as follows:—
From the rear corporate limits (then Tenth street) through and down Oasson street its entire length to the Red River front on said *55 street; thence from the head of Oasson street up Front street to the head of Jackson street, and down Front street from the head of Oasson street to the lower corporate limits of the town.
The grant is very full with regard to the right to enter upon and occupy Oasson street to the river with its tracks, switches, cars, etc.
Front street is the street that extends along the river front. With regard to it the grant stipulates that the company is' given full right and privilege of constructing, maintaining, working and operating double lines of tracks up and down the street from the head of Jackson street to the lower end of the town. It is, also,, given the right and privilege of erecting wharves and elevators along the river front.
The company was allowed 60 days in which to accept or reject the grant as made. It accepted it.
It was required to complete its road through the streets, over which the right of way was granted, and establish its depot and repair-shops on or at the head of Oasson street within 12 months from the date of the ordinance. No contention is raised that it did not complete its road and establish the depot within the 12 months.
So that, from and inclusive of the year 1883 to Ore present time — nearly 20 years— the railway company has occupied the streets named in its grant with its tracks, and operated its railway thereon.
The ordinance evidencing the grant stipulates that the privileges it confers ‘‘are given and they shall be and remain” upon certain conditions that are set forth.
The pleadings of the city name only three of these conditions which it asserts the railroad has neglected compliance with and for which it claims its franchise in Alexandria should be forfeited.
In its brief it names another and makes the same contention with regard to it. We will notice the latter first.
The grant stipulates the company shall complete its road through the streets over which the right of way is given and establish its depot and repair shops within 12 months from the adoption of the ordinance.
Some evidence was sought to be introduced by the city to show that no repair shops had been established. This was objected to on the ground that the same was not made an issue by any pleading filed on behalf of the city, nor was there allegation or proof that the company had been put in default in respect to same. The objection was overruled and the testimony admitted — a bill of exceptions being reserved.
This was error. The objection was good and no evidence should have been received relating to repair shops, or the want of them.
But even had the testimony been relevant, we do not find that the railway company is chargeable with delinquency in this particular.
In the first place, repair shops, if any particular rep’air shops are called for in the ordinance, were due to be established in 12 months of the adoption of the ordinance. Nearly 20 years have elapsed since then, and the city, in all that time, has uttered no complaint on that score, and made no demand of compliance.
In the second place, from the terms used in the grant it is clear that no particular repair shop or shops was stipulated for. ‘•Shall establish its depot and repair shops,” is the letter of the ordinance. Evidently, only such repair shop or shops as the railroad might need or see fit to establish in Alexandria was the intention of the ordinance — a matter of discretion with the company. If more was intended the ordinance would have been more specific.
Alexandria is the terminus of a branch line of the railway company and only such repair shop as might be required on such line was in contemplation. It is shown that it had extensive repair shops on its main line.
The proof administered further shows that a roundhouse was established in Alexandria and that repairing of engines was and is done in such places, and that conveniences for such repairing were provided there. In short, that a roundhouse is a repair shop.
This, then, was the company’s judgment of what should be there in the way of a repair shop, and the ordinance left it to the company as to what repair shops should be there when it used only the term “it shall establish its repair shops.”
One of the conditions of the grant which the pleadings of the city set up as not complied with, and which is, therefore, properly *57 an issue in the ease, is that the railway company shall at all times keep and maintain the streets over which it has the right of way in a cleanly condition, well drained and in good order.
The evidence does not establish any such neglect of duty by the company in this respect as warrants the forfeiture of its grant. In the 20 years of its occupancy of the streets but few complaints were lodged, or demands made upon it in connection with the condition of the streets, and it is shown that when called upon to do work on them it complied with the demands.
Another condition of the grant, which the company is charged with violating, is the one which stipulates that it '(the company) shall not be permitted in any way or manner to interfere with the free ingress and egress, or the free passage through Front street.
This charge arose in this way:—
When the company laid its tracks on Casson street and Front street, following the grant made to it in 1882, there was no levee along the Alexandria front. Subsequently, a levee was constructed along Front street and such location was given it that between the levee and the outer curb line of the banquette a full width of 40 feet for the street was left.
The river hank was on the other or east side of the levee. This levee was a small affair.
Following its construction (in which the railroad assisted) the company, in relaying its tracks, was permitted to place the same along the top of the levee, and from the inner rail of the track to the curb line the requirement of 40 feet left for the street was observed.
To permit connection of the track laid along the top of the levee with the tracks on Gasson street, a small ramp or incline of earth was necessary and it was made, and down the same from the levee, or up the same from the ground level, the connecting track was laid.
Without this ramp or incline the railroad would have been unable to utilize its right of way along Front street.
This continued without objection or complaint for years and down to the year 1901, when the board of state engineers, in connection with the board of commissioners of the Red River, Atchafalaya and Bayou Boeuf levee district, determined to enlarge and raise the levee along the Alexandria front.
This levee was part of the system of levees constructed and maintained by the state and the Atchafalaya levee district.
The enlargement and elevation of the levee along the river front was necessary for the protection of the town.
The state engineers and the levee district authorities entered upon the street and raised and enlarged the old levee, changing its location somewhat by placing the center of the new levee further away from the river. •
The new levee was made some four feet higher than the old, with the requisite corresponding increase of width of base.
This heightening of the levee made necessary the raising of the ramp, or earthen incline, by means of which the company’s tracks on Front street had connection with its line of road on the ground level of Casson street — that is to say, if the company was still to avail itself of, and utilize, Its right to maintain tracks and operate cars up and down Front street under the terms and conditions of the grant made to it.
So, the work of raising the ramp and enlarging it to meet the new conditions was begun, but before it was completed the mayor of the city called a special meeting of the board of aldermen and an ordinance was passed declaring the forfeiture of the grant, and this was followed by the present suit enjoining the company, and arresting its employes for trespass on the street.
With regard to this declaration of forfeiture, the same is without force and void. The municipal officials were without authority to adjudge that there had been a breach by the railroad company of the conditions of its franchise and contract with the city. Certainly so where the ordinance granting the rights claimed by the company did not stipulate such power, or reserve it to the municipality.
No notice was given to the company and no opportunity to defend afforded it The declaration of forfeiture was an arbitrary act. See City of St. Paul v. Chicago, M. & St. P. Ry. Co. (Minn.) 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 185.
The power to adjudge a breach of contract, or grant, with conditions, and deprive of *59 vested rights by forfeiture is judicial in character. It pertains to the courts and not to the grantors of the rights claimed under the grant.
The city of Alexandria might institute a suit to forfeit for failure of compliance with the conditions of the grant, but could not, itself, sit in judgment in a case where it is complainant and enter up judgment against the grantee.
This is what was done.
We do not find from the evidence that a ramp properly constructed on and across Front street, at the place where the one in question is located, will constitute an unreasonable or objectionable interference with the passage through that street, nor through Fulton street, which is perpendicular to the river at that point.
The testimony shows that plans for the ramp called for only a 5 per cent, grade and it was proven on behalf of the railroad company that it is its intention to make the ramp of that grade if permitted to complete the work.
In its present incomplete state there is an 8 per cent, grade, which is no greater than the grade of a ramp that affords a passage over the same levee at the head of Washington street, only a few blocks above, and which is used by wagons in reaching the public steamboat landing- at that point. It is shown that up and over the ramp at Washington street heavily laden wagons pass without difficulty.
And so, too, they pass over the ramp at Fulton street even in its present incomplete condition.
The superintendent of the railroad company testified the company will bring the ramp to a 5 per cent, grade; will, furthermore, put in such safeguards on the embankment as may be required by the city engineer; will see to it that the crossing is made a safe and practicable one before accepting it at the hands of the contractor; and that he is willing to comply with the requirements of the municipal authorities in regard to it, so far as the same may be reasonable.
A 5 per cent, grade is a rise of 5 feet in 100 feet, and the testimony shows this to be an easy, safe and practicable grade for all kinds of travel.
The city engineer testified that the ramp in question could be made safe by grading it properly and providing safeguards, so that wagons could not back off down the steep sides of the embankment next to the sidewalk. He also testified that if he were constructing the ramp he would do so upon a 5 per cent, grade, and that would be as small a grade as he would desire. He thought the ramp should be walled in so that the earth could not run on to the sidewalks, and a rail should be placed on top so that vehicles could not back off into the street; also that it should be properly drained and should be paved so as not to be slippery; that it would then be a safe and proper crossing.
The engineer of the railroad company testified that he considered these requirements of the city engineer as feasible and proper, and he would be willing to recommend their adoption, in the main, to his company.
In view of such testimony we are not prepared to accept the city’s contention that the construction of the ramp and its maintenance will be an obstruction of the street.
It will be time enough for the city to complain should the railroad, after a reasonable time, fail to put, and then maintain, the construction in the condition described by the engineers as being essential to make it a safe, easy and practicable crossing, and her rights in this regard are reserved.
The city’s contention is that the company has violated, or that it is impossible for it to fulfill, that condition of the grant which recites that the inside rail of its track as located on Front street shall be at least 40 feet from the outside line of the banquette of the street, so that the width of the street may be maintained at 40 feet.
It is not claimed that the track of the railroad, as located on the old levee, was not 40 feet from the outside curb line of the sidewalk. But when the state and levee-district authorities entered the street to construct the new and enlarged levee, permission was obtained from the railway company to use its track along the street for the purpose of facilitating the work of levee building, hauling dirt, etc. And the levee contractor got further permission to change the width of the track from standard gauge to narrow gauge.
In this way the track, as a narrow-gauge one, was laid on the top of the new levee *61 as it progressed, and dirt hauled over it to construct the levee.
It appears from the testimony of the city’s engineer that when the narrow-gauge track on tiie levee is changed to a standard gauge the distance from the inside rail to the curl) line will be 31% feet only.
But this standard-gauge track has not been constructed on the levee, and this narrow-gauge track there now was put there by the levee contractor for his convenience and is only a temporary structure.
So that the railroad company has not laid any tracks as yet which violate that condition of its grant which forbids it to lay a track on Front street any nearer than 40 feet from the outside curb line óf the banquette.
Nor has the company any right to put a track on the new levee that will be of less distance than 40 feet from the curb line. Neither the state levee authorities, nor the district levee authorities, have power to give it such right. The ordinance of the city controls this, the same as it would control if there was no levee constructed in the street.
Because an enlarged and raised levee has been constructed down the street in no waj1changes or alters the obligation of the company to put and maintain its tracks on the street a distance of 40 feet from the sidewalk.
If this cannot be done on top of the levee without increasing in width the levee embankment on the river side, then it is incumbent on the company, if it wants the track laid, to increase it, and having increased it to the necessary width so that the inside rail of its track will be 40 feet from the curb line, to proceed to relay its track, observing the distance of full 40 feet all along the line.
The city contends that the stipulation in the ordinance enjoining the laying of the track on Front street the full distance of 4Ó feet from the curb line, puts the obligation on the company of maintaining the street at that width from its inside rail.
Counsel for the company, in their brief, seemingly conceding this contention, argue that it was the action of the state in building the enlarged levee in the street that prevents the company from fulfilling this obligation, and that the effect of this is to relieve the company of the obligation itself, and, as a consequence, of the penalty for its nonfulfillment.
¡VVe find ourselves unable to agree with the construction that imposes upon the company the duty of maintaining the street between the inside rail of its track and the outer curb line of the banquette at the width of 40 feet.
The language of this portion of the ordinance conveying the grant is:—
“That the inside rail of the track or tracks up and down the said Front street shall be at least fully forty feet from the inside line of the banquette or sidewalk line on said street, so that the width of said street may be kept open and maintained at forty feet." (Italics ours.)
“Kept open and maintained at forty feet,” by whom?
If it were meant by the grantee, the ordinance would have said so. If the obligation of maintaining the width of the street at 40 feet from the outer line of the curb had been intended to be imposed on the company, more specific terms embodying that idea would have been used.
It is primarily the duty of the municipality to maintain the width of its streets. If it had been the intention to shift this responsibility upon the grantee company, as respects Front street, language direct and to the point would have been used, so stating plainly.
It was easy to do this by adding the words “by the grantee” at the end of the clause. Then it would have read “so that the width of said street may be kept open and maintained at forty feet by the grantee.”
But the words “by the grantee” were not added, and so there is nothing to indicate that the original duty of the town to maintain the width of its streets had, in this instance, as to Front street, been transferred to and imposed upon the company.
All that clause of the ordinance does is to forbid the inside rail of the company’s track on Front street coming any nearer the sidewalk than 40 feet. It was given the right of way on the street provided it could operate its cars on a track no nearer the sidewalk than 40 feet. Thus, if the river caved in the street to that extent that a railway track could not be placed upon it except at a less *63 distance than 40 feet from the curb line of the banquette, the right of way would be lost to the company
Since the ordinance did not impose, and the company did not take upon itself, the obligation of maintaining the street, open and at the width of 40 feet from the curb line to the railway track, in the sense that the company should be held responsible for whatever obstruction might be put by others, over whom it has no control, on the 40-feet width, it follows that no liability attaches to the company, and no penalty of forfeiture of its grant was incurred, by reason of the fact that the street is now less than the width of 40 feet because of the levee constructed upon it by the state authorities.
For the reasons assigned it is ordered, adjudged and decreed that the verdict of the jury and the judgment appealed from be set aside and annulled, and it is now adjudged and decreed that the demand of the city of Alexandria in its suit against Morgan’s Louisiana & Texas Railroad & Steamship Company be rejected and the injunction therein granted dissolved.
It is further ordered and decreed that in the suit of Morgan’s Louisiana & Texas Railroad & Steamship Company against the city of Alexandria there be judgment in favor of the plaintiff setting aside and annulling the action of the mayor and board of aider-men purporting to withdraw, revoke and annul the franchise or grant of right of way on certain streets as made to the said railway company by ordinance of the town of Alexandria adopted on the 7th of February, A. D. 1882.
It is further ordered, etc., that the injunction sued out by tbe said company be sustained and perpetuated to the extent of enabling the company to complete its ramp and lay and maintain its tracks on the same and on Front street in the manner and pursuant to the recommendations contained in the testimony of the engineers as embodied in the opinion herein.
It is further ordered, etc., that the reconventional demand of the defendant in the first suit, and that of the defendant in the second suit, be rejected respectively.
It is further ordered, etc., that the city of Alexandria, plaintiff in first suit and defendant in the second suit, be taxed with the cost of both suits.
NICHOLLS, C. J. I concur in the decree.