PROVOSTY, J.
The matter involved in this case is the interpretation of the following legacy:
“I devise to my three grandnieces, of Birmingham. Alabama, viz.: Ada Johnston, Eloise Johnston, and Emma Lou Johnston, my three (3) unimproved lots lying next to the corner of Crockett street and Marshall avenue in Shreveport, Louisiana, share and share alike.”
At the time-of making this will, Mrs. Mason owned three lots fronting on Crockett street. They were lot 16, at the corner of Crockett street and Marshall avenue; lot 15, next to lot 16; and then, skipping lot 14, lot 13 — all fronting on Crockett street. Lot 13, with lot 12, constituted the middle of the block of eight lots. It is noticed that the lots given are said to be unimproved, 'and to lie next to the corner. Lot 13, known as the “Home Place,” was improved, had on it the house in which the deceased had lived the better part of her life, and did not lie next to the corner, but was segregated from the lots lying next to the corner by the interposition of lot 14. On the other hand, it is noticed that the number of lots given is not two, but three.
The question is whether this home place was intended to be included in the legacy.
Mrs. Mason purchased lot 13 in 1854, before her marriage. The date of her marriage and the date of the death of her husband are not fixed; but the house on the lot was built after her marriage, and she and her husband lived in it during the whole time of their married life — some 20 years. It was an eight-room house, with a long kitchen at the back. It was known to the citizens of Shreveport as the “Mason House.”
Lots 16 and 15 were acquired by her at 'sheriff’s sale in 1882, one A. Currie repre *262 ■senting her in the purchase. The act of sale does not speak of improvements, and from this circumstance, and from the smallness of the price — $1,050 for the two lots — the infer■ence would be that the improvements were considered of little importance. The lots •seem to have been vacant property up to 1871, when one Strauss occupied them as a lumber yard, and had on them, besides piles of lumber and a lumber shed, a little office at the corner, with a side room, and on the side •of the lot 15, next to lot 14, a small building, with three rooms running back. Strauss •occupied the premises until 1873, and'had the premises fenced in. Thereafter the lumber shed, no longer used, was suffered to decay and fall. After Strauss, others occupied the two small buildings, paying about $12 per month rent. Later — exactly when, the record •does not show — a rough boxed house, with iron roof and no floor, was put on the rear part of the corner lot, to be used as a mechanic’s shop. This shop after five or six years was destroyed by fire. When the will was made, in 1896, the little office at the corner, and the small building with the rooms running back next to lot 14, were the only improvements on the property. Whether the wood shed had not yet fallen, and whether the fence put up by Strauss was still in existence, the record does not show.
At the death of her husband, which must •have been in the 70’s, Mrs. Mason returned to Memphis, Tenn., the home of her childhood, and lived there until the making of the will, in 1896, and until her death, in 1899. She, however, left her furniture stored in the house until 1895, the year before the making ■of the will, when she removed it to Memphis.
This home place must have been the most valuable piece of property of the estate of the testatrix. Apart from it, and her furniture and two lots in Memphis, one vacant and the other improved, of value not fixed •in the record, and the two lots, 16 and 15, her estate, as afterwards shown by distribution among her heirs, amounted to $4,308. We reach this figure by making a computation from the amount received by Mrs. Horns-by, as testified to by her.
In substance the will is as follows: The testatrix gives to her sister, Mrs. Miller, “the west one-half of the vacant lot on Monroe street.” The other half of this “unimproved” lot she gives, together with one “improved” lot, on which her niece, Mrs. Hornsby, lives, to the same Mrs. Miller and to Mrs. Miller’s daughter, share and share alike; Mrs. Horns-by, however, to have the right to continue to occupy the premises as long as she pleases, at $15 per month. To her grandnieces, of Birmingham, Ala., Ada Johnston, Eloise Johnston, and Emma Lou Johnston, she makes the bequest in question. She directs that the remainder of her estate, after payment of her debts, be distributed among her heirs, who are her said sister, her seven nieces and nephews, and her said grandnieces, the said Misses Johnston, in accordance with the law of descent and distribution of the state of Tennessee. This law is the same, by the way, as that of Louisiana.
The date of this will was the 22d of July, 1896. On the 20th of the following month the testatrix executed the following document:
“To prevent any future trouble in regard to my will I wish to state in the-presence of two witnesses on. this 20th day of August, 1896, that I do will and bequeath unto the three daughters of my niece, Mrs. H. R. Johnston, of 923 South Seventeenth street, Birmingham, Alabama, three lots owned by me with all the improvements thereon. These same lots are located on the corner of Crockett and Marshall streets in the city of Shreveport, State of Louisiana. [Signed] Elmira Mason.
“Witnesses: George Conrad Eyrieh. lone T. Hornsby.”
The will was probated in Memphis, Tenn., in April, 1S99, and in the parish of Caddo in June of the same year. On the November following, the three Misses Johnston sold to the defendant the lot 13, or home place, for $3,000. The present suit was filed one year afterwards. It is brought by Mrs. Hattie W. Miller, sister of the deceased, and by Mrs. Hornsby, and Mrs. Grisman and Albert By-rich and W. W. Brown, nieces and nephews of the deceased. The other nephews and nieces of the deceased apparently do not join in the suit
The point is made that the suit has about it something of a stale demand; but the delay, while not explained in the record, may possibly have resulted from the fact that the parties in interest live in different states, and *264 that a good deal of time must have been required to consult regarding the bringing of the suit.
The district judge, in an opinion showing careful study of the case, came to the conclusion that the document executed by the testatrix to explain her will made it plain that the intention was to bequeath the three lots on Crockett street. After much reflection, we have come to the opposite conclusion, and we shall proceed' to give our reasons.
Lots 16 and 15, at the corner of Marshall and Crockett streets, had been bought by the testatrix, as an investment, through an agent. During nearly the whole time she lived in the neighborhood they were vacant lots. Afterwards they had been used together as a lumber yard, with no division between .them, and the improvements that had been put upon them up to the time she changed her abode from Shreveport to Memphis had been of an insignificant character. Under these circumstances, her making a mistake in referring to her holding at this corner as being composed of three lots, and of the lots being unimproved, is explainable. On the other hand, the lot she had bought while still a spinster, which she had transformed into a home for herself and husband, where she and her husband lived until death put an end to their companionship (the “Old Mason Homestead,” as one of the witnesses calls it), around which clustered all the memories of her married life — that she should refer to it as an unimproved lot, lying next to the corner, is simply incredible.
The subsequently executed document is explainable on the theory that the lots 16 and 15, lying next to the corner, while the improvements upon them were of an insignificant character, yet were not, strictly speaking, unimproved, and that therefore it might be desirable to withdraw this expression of “unimproved,” used with reference to them. But no amount of explanation could account for the testatrix referring to the home of her entire married life, of some 20 years, as an “unimproved lot.” The parol evidence shows that by this subsequent document there was no intention to change the will. Therefore, in order that lot 13 should be held to be included in the bequest, we should have to admit the testatrix could have had reference to her former home, in speaking of “my three unimproved lots lying next to the corner.”
Did the document not itself contain an ambiguity, it would, as a matter of course, have to be taken at the foot of the letter, no matter how improbable in its purport; but it is-divided against itself, and therefore cannot stand. In it the lots in question are referred to as being on the corner of Marshall and Crockett streets. Now, during the time-the testatrix lived in Shreveport, the lot 14, between her home and the lots 15 and 16,. at the corner, did not belong to her, and there was a' house, known as the “Zodiac House,” on it. Therefore the remark made-above may be repeated here — that while it is possible that the testatrix may have made a mistake in supposing that her holding at the corner constituted three lots, and not merely two, it is simply impossible that she-should have made a mistake, and supposed her home place to lie next to the corner, when it was separated from the corner by the interposition of another built-up and occupied lot, and lay in the middle of the block.
This interpretation accords with the manner in which the deceased, both before and after making the will, was in the habit of referring to her property in Shreveport. She-would refer to it as the “Travis street property,” the “lots on the corner of Marshall and Crockett streets,” and the “Home Place.” And after the making of the will, she would speak of the property given to the children of Mrs. Johnston, and also of the Home place; showing clearly that she did not understand the home place as being included in the property given to the children of Mrs. Johnston. It accords, also, with the rule that, in case-of doubt, that interpretation is preferred which approximates closest to the legal order-of distribution. Burthe v. Denis, 31 La. Ann. 5G8. Nothing in the record shows that the relatives of the testatrix did not stand equal in her affection, except, perhaps, the sister- and the nieces with whom she lived, nor that there was among them any disparity of worldly circumstances, such as might appeal to her liberality more strongly in favor of one-than of the other; and yet, if this home placéis held to be included in this legacy, there is an entirely disproportionate share given to-these grandnieces, and the will is lopsided.
Defendant is entitled to judgment against: *266 the plaintiffs -on his reconventional demand to the amount of $241, and to hold possession of the property until this amount is paid. Plaintiffs are entitled to rents and revenues from the date of the present judgment. For adjudication as between the defendant and his warrantors, the ease must be remanded.
It is therefore ordered, adjudged, and decreed that there be judgment set'ting- aside the judgment appealed from, and decreeing the plaintiffs to be owners of m/24 of the property in controversy (being lot 13 of the block bounded by -Marshall, Crockett, McNeill, and Cotton streets, in the city of Shreveport), in the proportion, as between themselves, alleged in the petition herein, and that the defendant pay the costs of suit in both courts; and it is further ordered, adjudged, and decreed that the defendant have judgment against the plaintiff for is/24 of the sum of $241, with 5 per cent, per annum interest thereon from the date of this judgment, with right to hold possession of said property until the present judgment be paid, but that he be responsible to the plaintiffs for rents and revenues of said property in the same propor-' tion in which the said plaintiffs are the owners thereof.
It is further ordered, adjudged, and decreed that this case be remanded for adjudication •of the demand of the defendant in warranty against his vendors.