**94 So.2d 257**

**Succession of George Jacob KAMLADE.**

**No. 42872.**

**Feb. 25, 1957.**

**Rehearing Denied April 1, 1957.**

Baldwin, Haspel & Molony, Conrad Meyer, III, James Everett Brown, Mark W. Malloy, McCloskey & Dennery, Joseph McCloskey, James E. Wright, Jr., William J. Daly, New Orleans, for defendants-appellants.

Cabral & Cabral, Harry R. Cabral, Harry R. Cabral, Jr., Thomas C. Wicker, Jr.,

George M. Brooks, Roland R. Selenberg, New Orleans, for defendants-appellees.

HAMITER, Justice.

George Jacob Kamlade died at his domicile in the Parish of Orleans on February 16, 1952, leaving an olographic last will and testament which carried the dateline "New Orleans May 27/33" and, among other things recited: "It is my wish that my estate be used for the care and keep of my brother's widow, Selma, and * * * after the death of my sister-in-law, I wish my estate to be divided as follows, one half to go to my cousins from my Mother's side of the family and the remaining half to my cousins from my Father's side of the family, * * *." Numerous cousins were the only relatives surviving the decedent.

Following probate of the will the duly qualified co-executors petitioned the district court for a judgment, under the Uniform Declaratory Judgment Act (LRS 13:4231 et seq.), declaring and decreeing the meaning of the testator's recital that " * * * one-half to go to my cousins from my Mother's side of the family and the remaining half to my cousins from my Father's side of the family." Cited to appear in the proceeding were some twenty-five persons allegedly the surviving cousins (or their legal representatives) of the decedent, they being first, second and third cousins on his father's side and second and third cousins on his mother's side.

All defendants answered the petition and thereafter the cause was tried on its merits, principally on an agreed stipulation of facts although some oral and documentary evidence was introduced (over objections) for the purpose of showing testamentary intent of the decedent. Ultimately, the trial judge rendered a judgment decreeing " * * * that the disposing clause of decedent's will wherein he left one-half of his estate to 'my cousins from my Mother's side of the family' and the remaining half to 'my cousins from my Father's side of the family' is void for obscurity and uncertainty * * * that the residuum of decedent's estate should be inherited by the closest of kin to the decedent as in case of intestacy."

But such judgment was not signed. Rather, the judge granted a rehearing and (in reversing himself) ruled " * * * that the disposing clause of decedent's will wherein he left one-half of his estate to 'my cousins from my Mother's side of the family' and the remaining half to 'my cousins from my Father's side of the family' should be interpreted as meaning that one-half of decedent's estate should go to the nearest surviving cousins on his Mother's side of the family and the remaining half should go to the nearest surviving cousins on his Father's side of the Family, * * *."

Accordingly, the district court finally decreed that one-half of the estate of decedent be divided equally among the named first cousins on his father's side and that the re-

maining half be divided equally among the designated second cousins on his mother's side (they were the nearest of kin on the respective sides).

From the judgment all parties defendant appealed except the nearest surviving cousins on the mother's side of the family (second cousins of decedent).

Initially, we shall consider the contentions of the nearest surviving cousins on the father's side of the family (first cousins of decedent and sometimes referred to hereinafter as "first cousin appellants") who were recognized by the judgment as being entitled to one-half of the estate in question and are seeking on this appeal to recover the remaining one-half.

■ It is urged by them that the testamentary disposition under consideration contains a prohibited substitution and, hence, is null and void; and that they, being the nearest heirs of decedent, should inherit the entire estate as in an intestate succession. In this connection reference is made to the following recital which precedes the disposition: "It is my wish that my estate be used for the care and keep of my brother's widow, Selma, and * * * after the death of my sister-in-law, I wish my estate to be divided as follows * * *." (Then follows the disposition.)

For at least one reason such attack is not maintainable. According to the agreed stipulation of facts the mentioned sister-in-law predeceased the testator. This being true the recital in her favor was without substance when the will became effective on the death of the testator. As stated in Revised Civil Code Article 1697, "The testamentary disposition becomes without effect, if the person instituted or the legatee does not survive the testator." It is true, as counsel point out, that the "purpose of outlawing substitutions is to prevent the practice of taking property out of commerce"; and that "a disposition of property reprobated by law, such as a substitution, is not susceptible of confirmation or ratification." But obviously, under the circumstances, neither of these principles is appropriate here.

■ Again, the will is assailed by first cousin appellants as being without a certain date, the testator having dated it "May 27/33". For at least two reasons this attack, made for the first time after trial and in a memorandum brief, likewise cannot succeed. Firstly, the issue was not properly raised by the pleadings or otherwise in the district court. City of Alexandria v. Morgan's Louisiana & T. R. & S. S. Co., 109 La. 50, 33 So. 65; New Orleans Land Co. v. Board of Levee Commissioners of Orleans Levee District, 171 La. 718, 132 So. 121; and Weingart v. Delgado, 204 La. 752, 16 So.2d 254. Secondly, the agreed stipulation of facts, to which counsel subscribed (and on which the case was principally tried), specifically states "that the decedent

died testate, leaving a last will and testament dated May 27, *1933* * * *", a date that is unquestionably certain.

Next, the first cousin appellants contend that the word "cousins" as used in the testament means "first cousins" only. Alternatively, if the word is not so interpreted, they suggest that the entire disposition must be declared void for uncertainty with the result that they, being decedent's closest collateral relatives, would inherit (as in an intestate succession) the whole of the estate.

█ We can find nothing within the four corners of the will indicating that the testator intended the disposition to be restricted to his first cousins, and the extrinsic evidence introduced (over the objections of their counsel) does not disclose that they were held in greater esteem than more distant collaterals.

Counsel for those appellants correctly state in their brief: " * * * That part of the decedent's testament which contains the term 'cousins' was written by him in 1933. At that time, the decedent had four first cousins living on his father's side of his family, and had two first cousins living on his mother's side of the family, namely, Elizabeth Awcock and Lotta Awcock. The stipulation of facts and the evidence introduced in the record at the trial of this cause show that the two first cousins on the decedent's mother's side of the family, mentioned above, died on April 26, 1945 and January

4, 1941, respectively." However, it is important to notice that the testator did not die until 1952 and that for the last seven years of his life he had no first cousins on his mother's side of the family. Seemingly, under these circumstances, he would have changed his will during that seven year period so as to expressly restrict the disposition to the surviving first cousins if he intended that only they were to participate in the distribution of his estate.

In further support of the contention that the word "cousins" means "first cousins" only, counsel cite Revised Civil Code Articles 95 and 892, some early decisions in the Louisiana jurisprudence, and numerous cases from common law jurisdictions. The codal articles make reference to "first cousins" and "cousins german in the fourth (degree) and so on", thus indicating that the word "cousins" must be appropriately qualified in order to limit its meaning to first cousins. The common law cases, of course, are not controlling here even if analogous. And the cited early Louisiana decisions are not applicable, for therein the testator designated persons of specific degrees of relationship.

██ Neither is there merit to the above stated alternative suggestion that the entire disposition must be declared void by reason of uncertainty. It fails to give recognition to the requirement that in the interpretation of wills certain cardinal principles are to be applied. Some of these are:

"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." Civil Code Article 1712.

"A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." Civil Code Article 1713.

"To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of LaBarre, 179 La. 45, 46, 153 So. 15." Succession of Price, 202 La. 842, 13 So.2d 240, 244.

These principles, when applied here, require that the estate of this decedent be divided into two equal portions, one-half for the mother's side of the family and the other half for the father's side. In unmistakable language he expressed an intention for such a division, and there appears no valid reason for rejecting it. Therefore, the intended division can and must be rendered effective.

But what was meant by the testator when using the unqualified word "cousins"? To which cousins on each side of the family did he intend to bequeath his property? As before shown the disposition clearly was not limited to first cousins. Nor can we agree (as is contended by those appellants herein who are more distant relatives than the first cousin appellants) that the word "cousins" is to be interpreted as meaning "all cousins" of whatever degree. While our law obviously recognizes relations beyond the fourth degree (or first cousin), as is implied in Revised Civil Code Article 892 above mentioned, there is nothing indicating the number of degrees to which recognition is to be given. Accordingly, a person may have relations in the twentieth, thirtieth or fortieth degrees—a thousand or more cousins, many of whom would be unknown to him. For this reason it is difficult for us to believe that this testator intended to favor all cousins of whatever degree.

Consequently, we must conclude that the word "cousins" as used in the will is of doubtful meaning—it is ambiguous or uncertain. And the extrinsic evidence adduced, conflicting for the most part, fur-

nishes no aid in resolving the ambiguity. However, a disposition must be understood in the sense in which it can have effect, rather than that in which it can have none. Revised Civil Code, Article 1713. In other words if there is an interpretation which will save the decedent from intestacy it must be adopted.

Recognized in our jurisprudence is the rule that if a will is attended with doubt or ambiguity either as to a legatee or the amount of a bequest, and extrinsic evidence furnishes no aid in resolving the doubt, it is not to be declared void by reason thereof; rather, that interpretation will be given the testament which will most closely approximate the legal order of distribution. See Burthe v. Denis, 31 La.Ann. 568, Miller v. Hirsch, 110 La. 259, 34 So. 435 and Succession of Williams, 132 La. 865, 61 So. 852. In the Burthe case the following was said: " * * * Another important rule is, that in case of doubt, that interpretation should be preferred which will approximate closest to the legal order of distribution. * * *"

By applying this rule and the other rules above discussed we arrive at the conclusion that the trial judge correctly interpreted the disposition in question as meaning that "one-half of decedent's estate should go to the nearest surviving cousins on his Mother's side of the family and the remaining half should go to the nearest surviving cousins on his Father's side of the family."

For the reasons assigned the judgment appealed from is affirmed.

PONDER, J., dissents.

SIMON, J., recused.

McCALEB, Justice (concurring in part and dissenting in part).

I concur in the rulings of the court with respect to the attacks on the legality of the will by the first cousins of decedent and it is also clear that the testator provided for his estate to be divided into two equal portions, one-half for his mother's side of the family and one-half for his father's side.

However, it is my opinion that, since it is well established by eminent law writers and a unanimity of opinion in other jurisdictions that the word "cousin", as used in a will, means first cousin, see Black's Law Dictionary, 2d Ed., page 292; 21 C.J.S., pp. 862, 863; Page, "Treatise on Law and Wills", 3d Ed. (1941); Thompson on "Wills", 3d Ed. (1947) and cases cited in Annotation, 19 A.L.R. 1410 et seq., and since there are no surviving first cousins on the testator's mother's side of the family, that disposition lapses and the heirs at law, i.e., the first cousins on the father's side, inherit.