581 So.2d 728 (1991)
In the SUCCESSION OF Natalie Frankie Simmons MERRITT.
No. CA 90 0417.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Writ Denied September 20, 1991.
*729 Charles V. Genco, Amite, for Inez S. Lea, Winnie S. Brignac, Essie S. Graham and Hulon L. Simmons.
J. Lynn Ponder, Amite, for Hillary Simmons and Edward Earl Lawrence, appellant.
Richard A. Schwartz, Amite, for Jean S. Dees, Sylvia S. Rioux and Connie Penton Newsom.
Before EDWARDS, WATKINS and LeBLANC, JJ.
EDWARDS, Judge.
Edward Earl Lawrence, a named legatee in the holographic will of Natalie Frankie Simmons Merritt, appealed the judgment of the trial court holding that parol evidence was not admissible to determine the intention of the testator and that the disposition to Mr. Lawrence contained a prohibited substitution. We affirm.

FACTS
The disposition in question reads as follows:
The house left like it is and land and timber for Edward Earl Lawrence at his death it will come back to all brother Hulon and Sisters Children

EXTRINSIC EVIDENCE
Mr. Lawrence argues that the trial court erred by not allowing extrinsic or parol evidence to discover the testator's true intention.
The trial court cited LSA-C.C. art. 1715, which allows the use of extrinsic evidence to discover the intent of the testator. The court noted that parol evidence is admitted on a limited basis in specific instances, such as allowing testimony to establish the date of the will or to identify a legatee when the will contains ambiguities. However, the trial court ruled that parol evidence was inadmissible to establish the possible intention of the testatrix, Natalie Merritt, and cited Succession of Shows, 158 So.2d 293 (La.App. 1st Cir.1963), affirmed, 246 La. 652, 166 So.2d 261 (1964); Succession of Faggard, 152 So.2d 627 (La.App. 2d Cir. *730 1963); Succession of Maginnis, 158 La. 815, 104 So. 726 (1925); Sucession of Rusha, 158 La. 74, 103 So. 515 (1925). A prior will was admitted by the court.[1]
The following articles of the Civil Code contain the rules for interpretation of legacies:
Art. 1712. Intention of testator
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
Art. 1713. Sense which gives effect
A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
Art. 1714. Ambiguity as to legatee
In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, and to him shall the legacy be decreed.
Art. 1715. Interpretation to ascertain intent
When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
Although it is incumbent upon the court to interpret a will so that it may be given effect, the court must interpret the will as written. Succession of Flowers, 532 So.2d 470, 472 (La.App. 1st Cir.), cert. denied, 534 So.2d 446 (La.1988). Where there is ambiguity as to the legatee, the thing to be bequeathed, or the portion, or where there is doubt as to the sense in which the words were used by the testator, resort may be had to extrinsic evidence. Otherwise, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is assumed to be conveying his ideas to the best of his ability so as to be correctly understood at first view. Succession of Hurst v. Gremillion, 552 So.2d 799, 801 (La.App. 1st Cir.1989).
Extrinsic evidence is used to determine what the words of the testator, as written, actually mean. That evidence must be used only to resolve ambiguity, and not used to rewrite the will or do violence to its terms. Succession of Hurst, 552 So.2d at 801. Testamentary dispositions cannot be established, as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. Succession of Faggard, 152 So.2d 627, 630 (La.App. 2d Cir.1963).
There is no obvious ambiguity in the provisions as to the identity of the legatee or the land to be conveyed. The intention of the testator, that the house, land, and timber go to Mr. Lawrence and, after his death, to the testator's nieces and nephews, can be determined from the words as written.
Under the circumstances here, the trial court did not err in refusing to allow parol evidence.

PROHIBITED SUBSTITUTION
Mr. Lawrence argues that the provision does not contain a prohibited substitution. Instead, the disposition gives full ownership of the land and timber to Mr. Lawrence, and a life usufruct over the house *731 with the naked ownership going to the nieces and nephews. In the alternative, Mr. Lawrence asserts that any illegal substitution is a fidei commissum and not a prohibited substitution.
The trial court relied on Succession of Smart, 214 La. 63, 36 So.2d 639 (1948) and concluded that the bequest to Mr. Lawrence contained a prohibited substitution. In the court's opinion, another result could be obtained only from a strained interpretation of the wording of the will. Because the disposition contained a prohibited substitution, the court held that the disposition to Mr. Lawrence was null and void.
LSA-C.C. art. 1520 provides:
Art. 1520. Substitutions and fidei commissa
Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
The essential elements of a prohibited substitution are:
1. The original testator leaves the property to A;
2. A is obliged to keep the title to the legacy inalienable during A's lifetime; and,
3. At the death of A, the same property must go to B, who was chosen by the original testator. See Succession of Stewart, 301 So.2d 872, 881 (La.1974). The property is kept out of commerce by the first legatee, A, because A has been directed to return the property, at his death, to a second legatee named by the testator. The testator attempts to make a testament for his legatee "and to substitute his own will for the legal order of succession from his... legatee." Succession of Stewart, 301 So.2d at 881.
In Maddox v. Butchee, 203 La. 299, 14 So.2d 4, 6 (1943), the supreme court found that the following disposition contained a prohibited substitution:
At my Death I donate and bequeath all the property I then own to my husband... after his death it is to go to my great niece....
In Succession of Smart, the will contained the following disposition:
The house I live in to Emile and Mattie jointly. The place to be sold at their death and divided between nieces.
Succession of Smart, 36 So.2d at 641. The Louisiana Supreme Court held that the excerpted disposition contained a prohibited substitution.
The probated will in this case made a specific disposition of the land and the timber. The provision contained a direction that the house, land, and timber were to go to other legatees at the death of Mr. Lawrence. The wording here and in Succession of Smart and in Maddox is similar. To ignore the clear words of the disposition would result in the court's rewriting the will.
The provision in the will, as written, does not support a finding that Mr. Lawrence was bequeathed a life usufruct over the house and the full ownership of the land and the timber. The bequest was not for the use of the property and does not contain words to that effect. See Succession of Thilborger, 234 La. 810, 101 So.2d 678 (1958).
The illegal substitution cannot be read as a fidei commissum, which is also prohibited by LSA-C.C. art. 1520. In a fidei commissum, the first legatee is vested with the title of the property with the expressed hope that the legatee at his death will leave the property to a second designated legatee. The direction to the first legatee is viewed "as a precatory suggestion addressed to the conscience of the ... legatee, which, being illegal, but harmless, can have no binding effect, and may be legally regarded as not written." Succession of Stewart, 301 So.2d at 881, quoting from Succession of Reilly, 136 La. 347, 67 So. 27 (1914). The provision here directs the legatee to return all the property.
We cannot say that the trial court was manifestly wrong in its interpretation of *732 the testator's intent or erred in its finding that the provision contained a prohibited substitution.
For these reasons, the judgment of the trial court is affirmed. Costs are assessed to appellant, Edward Earl Lawrence.
AFFIRMED.
NOTES
[1] Dispositions from the previous will, subsequently revoked, contained the following provisions:

All land timbered out side Fences left to Edward Earl Lawrence Nephew around all fences, north, South, East and West.
* * * * * *
The house place left undivided for its left to Edward Earl Lawrence at his death it will come back to all nephews and Nieces.