653 So.2d 8 (1995)
Succession of Patricia Gay MYDLAND a/k/a Emma Gay Wood Gaddis.
No. 94 CA 0501.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Rehearing Denied May 2, 1995.
*9 Richard L. Greenland, Covington, for legatees-appellants Heirs of Juanita Guess Gay, et al.
Nita R. Gorrell, Hammond, for succession-appellee Executor of the Succession of Patricia G. Mydland.
Catherine S. Nobile, Seale, Smith, Zuber, & Barnette, Baton Rouge, for legatee-appellee Bobbye M. Hall.
*10 Before GONZALES, PARRO and REDMANN,[1] JJ.
PARRO, Judge.
Certain legatees named in the statutory will of Patricia Gay Mydland, as well as other legal heirs, appeal from that portion of the trial court's declaratory judgment holding that a particular legacy pertaining to the testatrix's interest in L & P Enterprises, Inc. had lapsed due to the dissolution of the corporation after the making of the will but prior to the testatrix's death. We affirm.

Facts
Patricia Gay Mydland ("Mydland") died on November 12, 1990 and left a last will and testament dated September 24, 1985. The will was in statutory form and the disposition in question provided as follows:
I give and bequeath the following property of which I die possessed, as follows:

. . . . .
4). All of my interest in L & P Enterprise[s], Inc. to Austin Gay, Jr., Dallas Gay, Donnie Gay, Austina Gay, Virginia Patricia ("Ginger") Gay, and Ray Allen Gay, in equal shares.
Mydland was the sole shareholder of L & P Enterprises, Inc. ("L & P"), whose sole asset on September 24, 1985 was a motel. In 1988, L & P sold this motel in a credit sale, and a promissory note in the sum of $265,000 made payable to L & P was given in conjunction with this transaction. Thereafter, L & P was dissolved, at which time the promissory note (the only asset) was transferred to Mydland.
After Mydland died in 1990, the testamentary executor filed a petition for declaratory judgment seeking judicial interpretation of certain provisions of the will. Among those provisions was the bequest of "[a]ll of my interest in L & P Enterprise[s], Inc." referred to above. The executor alleged that the promissory note became purely the personal property of Mydland upon the dissolution of the corporation. However, the executor's position was opposed by the particular legatees of this bequest, who contended that the testatrix's intent was that they receive her interest in the promissory note that was transferred to her upon the dissolution of the corporation.
After a hearing, the trial court found, among other things, that the legacy had lapsed due to the dissolution of the corporation. In other words, the named legatees were not entitled to inherit the promissory note pursuant to this bequest. Thereafter, these named legatees and certain legal heirs filed a motion for new trial as to the trial court's ruling on the legacy and argued that new evidence had surfaced after the trial that could not have been obtained with due diligence prior to trial. Believing that the evidence was cumulative, the trial court denied the motion for new trial.
Disagreeing with the trial court's judgment and its ruling on the motion for new trial, the particular legatees, namely, Austin Gay, Jr., Dallas Gay, Donnie Gay, Austina Gay, Virginia Patricia Gay, and Ray Allen Gay, as well as the legal heirs of William H. Gay and his wife, Juanita Guess Gay (collectively referred to as "appellants"), appealed and assigned as error the trial court's finding that the bequest had lapsed and its denial of the motion for new trial.

Standard of Review
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id. at 882; see Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
*11 Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1st Cir. 1990).

Discussion
The primary issue in this case is whether the testatrix's bequest, made prior to dissolution of the corporation, of "[a]ll of my interest in L & P Enterprise[s], Inc." included the testatrix's personal ownership of corporate assets transferred to her upon the corporation's dissolution. To resolve this issue, this court must determine what effect the dissolution of the corporation (after the execution of the will but prior to the testatrix's death) had on this bequest.
A testamentary disposition, the terms of which express no time, neither past nor future, refers to the time of making of the will. LSA-C.C. art. 1722. Since Mydland simply bequeathed her interest in L & P without reference to time, the legatees would simply be entitled to any interest that Mydland had at the time of the making of her will (September 24, 1985). Therefore, our inquiry for purposes of this issue is to determine what interest Mydland held in L & P on September 24, 1985.
At the outset, we note that a corporation is a separate and distinct legal entity. LSA-C.C. art. 24; Richard v. Morgan, 433 So.2d 263, 264 (La.App. 1st Cir.), writ denied, 438 So.2d 1108 (La.1983). It has the power to buy and sell property, make contracts, incur debt, sue and be sued. LSA-R.S. 12:41(B). The property of the corporation is not the property of the individual shareholders. LSA-C.C. art. 24, comment (d); Levert v. Shirley Planting Co., 135 La. 929, 66 So. 301 (1914). Nor does a shareholder have a pecuniary interest in the property owned by the corporation. Id. Although shareholders have certain rights as provided by law and in the corporation's articles of incorporation or by-laws, such shareholder rights do not entitle them to any direct ownership interest in property owned by the corporation. LSA-R.S. 12:1 et seq. A shareholder's ownership interest in the corporation is in the stock issued by the corporation and not the corporate assets.
Regarding the dissolution of the corporation, the parties do not dispute that L & P was dissolved prior to Mydland's death. Shareholders, subject to any applicable liquidation preferences and other rights, share proportionately in the net assets remaining after satisfaction of corporate creditors when the corporation is dissolved. LSA-R.S. 12:145(F); Levy v. Billeaud, 443 So.2d 539, 543 (La.1983). Upon dissolution of L & P, Mydland, as sole shareholder, obtained all of the assets remaining after satisfaction of corporate debts, if any existed. Accordingly, the promissory note, the only remaining asset, was transferred to Mydland.
With these principles in mind, we must next determine what the testatrix intended by her bequest of "[a]ll of my interest in L & P Enterprise[s], Inc." In making this determination, we are guided by the following rules for interpreting wills found in the Louisiana Civil Code:
Art. 1712. Intention of testator
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
Art. 1713. Sense which gives effect
A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
Art. 1715. Interpretation to ascertain intent
When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
The function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will. Succession of Hurst v. Gremillion, 552 So.2d 799, 801 (La.App. 1st Cir.1989). Although it is incumbent upon the court to interpret the will so that it may be *12 given effect, the court must interpret the will as written. Succession of Merritt, 581 So.2d 728, 730 (La.App. 1st Cir.) writ denied, 584 So.2d 1165 (La.1991); Succession of Flowers, 532 So.2d 470, 472 (La.App. 1st Cir.), writ denied, 534 So.2d 446 (La.1988). The first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. Succession of Merritt, 581 So.2d at 730. The testator is assumed to be conveying his ideas to the best of his ability so as to be correctly understood at first view. Id. When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will.[2]Succession of Williams, 608 So.2d 973, 975 (La.1992).
Considering these rules of interpretation and the rights and interests that Mydland held at the time of the execution of her will, there is no obvious ambiguity in the provision leaving all of her interest in L & P. At the time of the making of this bequest, Mydland's interest in L & P was confined to her ownership of shares of stock in L & P and the rights derived therefrom. L & P, as a separate legal entity created under the laws of Louisiana, was the owner of its assets, not Mydland. In fact, Mydland (even as sole shareholder) did not have a pecuniary interest in the property owned by L & P. Under the circumstances of this case, the term "all of my interest," when given its usual and ordinary meaning, would not include assets of the corporation. To hold otherwise would be to give the appellants greater rights than Mydland held as a shareholder and would ignore the separateness of the corporate entity.
It was not until the dissolution of this corporation that Mydland's entitlement to the remaining assets (after payment of all creditors, if any) arose, at which time the promissory note was distributed to her as part of the liquidation process. As a result of this transfer, the promissory note became a personal asset of Mydland. Furthermore, in light of the dissolution of L & P prior to Mydland's death, we find that Mydland did not have an "interest" in L & P at the time of her death. Thus, the legacy in question fell upon the dissolution of the corporation. See LSA-C.C. art. 1700.
If Mydland desired that the designated legatees receive the promissory note that was transferred to her upon dissolution of the corporation, she could have executed a codicil to her will or redrafted her will making a provision for such a disposition. See Succession of Cage, 393 So.2d 220, 221 (La. App. 1st Cir.1980). In the absence of a valid codicil or a subsequent testament,[3] we conclude that the trial court's finding that the appellants were not entitled to the promissory note under the terms of this bequest was reasonable and was neither clearly wrong nor an error of law.[4] Furthermore, in light of the evidence presented and considering the applicable law, we conclude that the trial court did not err in denying the appellants' motion for new trial.

Decree
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
REDMANN, Judge pro tem., dissenting.
I. The executor does not have power to revoke a legacy. His unsupported (and, more probably than not, mistaken) allegation that the testatrix had dissolved her 100%-owned motel corporation does not revoke the legacy to appellants of "all of my interest" in that corporation (including power to terminate an uncompleted dissolution, La.R.S. 12:149B).

*13 II. The predeceasing of the brother to whom the testatrix left "the remainder of my estate ..., with the request that he will said remainder to" second-named persons, makes the legacy ineffective as to him, C.C. art. 1697, but not as to the second-named persons. Instead, that predeceasing leaves as the residuary clause, "I request that the remainder [go] to" the second-named persons, effectively ripening the request into a legacy to those second-named persons (much as the death of the first legatee under a prohibited substitution converts the substitution into a valid legacy to the second legatee; Succession of Kamlade, 232 La. 275, 94 So.2d 257 (1957)).
The judgment appealed should therefore be reversed as to appellants, and the matter remanded for further proceedings.

I.
The secretary of state's certificate, of which the executor presented a photocopy to the court as the certificate of dissolution of the testatrix's motel corporation, expressly declares it is not a certificate of dissolution: "Nothing contained herein shall be construed as a dissolution of the above named corporation, which dissolution can only be effected in accordance with the provisions of R.S.1950, 12:148."[1]
That certificate merely certifies a true copy is attached (in fact it is not: why?) of shareholder action that authorizes the corporation to be dissolved.
This record simply does not support the trial court's ruling that the testatrix revoked her corporate-interest legacy to appellants by dissolving the corporation.[2] The executor proved neither that testatrix dissolved the corporation, nor that the corporation-in-liquidation transferred the motel-sale note to testatrix. Absent such proof, appellants as sole shareholders would have the same rights testatrix did, including by unanimous consent, R.S. 12:76 A, to terminate the uncompleted dissolution and revive the corporation, R.S. 12:149 B, and undo steps taken toward dissolution (except contracts with persons other than herself as shareholder), including returning the note to the corporation (if it had ever been transferred to her from the corporation).
Remand is required for evidence on dissolution or non-dissolution (readily available from the secretary of state) and, perhaps, on any transfer of the note to testatrix.

II.
The testatrix also named appellants as secondary, "requested" beneficiaries of the residue of her estate: "I leave and bequeath the remainder of my estate to my brother, William H. Gay, with the request that he will said remainder to the children of Austin Gay," the appellants.
True, William Gay (had he survived) could have ignored that request as merely precatory. But William Gay died before the testatrix, and the question is whether the residuary legacy clause has meaning and effect, or, instead, the testatrix is intestate as to her residue, just as if that clause had named only her brother.
The brother's predeceasing the testatrix would cure the invalidity, if that residuary clause were a blatant prohibited substitution under La.Civ.Code art. 1520. Succession of Kamlade, 232 La. 275, 94 So.2d 257 (1957). The same result obtains under French *14 Code Civil art. 896 (source of Louisiana's art. 1520).[3]
The brother's predeceasing the testatrix equally solves the precatory language problem, under ordinary Civil Code testamentary interpretation rules. Interpretation of a will must seek the testator's intent. Art. 1712. "A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none," art. 1713.
The donative intent of the testatrix in this residuary legacy clause seems clear. Given that her brother predeceased her, and that she expressly "requested" that, as her legatee, he give her residue to appellants on his death, one may with ease understand her residuary clause to request her executor (and the courts) to give that residue on his death to appellants, her nieces and nephews. In that sense, the residuary clause "can have effect," and art. 1713's direction is followed.
Furthermore, if testatrix's intent were deemed unclear, the testimony of testatrix's regular lawyer, who drafted this statutory will, would be admissible. C.C. art. 1715. That lawyer testified that the testatrix wanted her brother to have her residue, and also wanted appellants to have the residue to the extent the brother did not expend or dispose of it.[4] She also wanted to avoid a prohibited substitution under C.C. art. 1520. Her hope was to accomplish, with her brother's cooperation, a substitution's benefits without its risk of total invalidity, and without the complication of establishing a trust. (A simple "vulgar substitution," C.C. art. 1521, of appellants as alternate legatees if the brother predeceased, as done for two other legacies, would not express testatrix's donative desires towards appellants if the brother survived.) This testimony supports the conclusion that testatrix's intent was that appellants should take if the brother predeceased the testatrix.
Appellants did not argue this second principal issue. Nevertheless, considering the rights of testatrix to have her will executed and of appellants to receive their full legacies, I believe this is a case in which the appellate court should sua sponte review this issue, as authorized by C.C.P. art. 2164.
I see no legitimate reason to defeat the reasonably clear intent of the testatrix, despite her arguable "ignorance of legal subtleties," Planiol, op. cit. § 3295, p. 602.

Conclusion
The Louisiana Code of Civil Procedure, art. 2164, provides: "The appellate court shall render whatever judgment is just, legal and proper upon the record on appeal."
Upon the record on this appeal, first, the judgment appealed from should be reversed on the issue of the effect of the legacy of testatrix's interest in the motel corporation, and remanded to permit the executor to prove, if he can, by certificate from the secretary of state, that the motel corporation was dissolved before the testatrix's death and the note transferred to the testatrix; and, second, it should be reversed in its interpretation of the residuary legacy clause and appellants should be declared the residuary legatees.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Extrinsic evidence is used to determine what the words of the testator, as written, actually mean. That evidence must be used only to resolve ambiguity, and not used to rewrite the will or do violence to its terms. Succession of Hurst v. Gremillion, 552 So.2d at 801.
[3] To be a valid codicil or subsequent testament, the act must be made in one of the forms prescribed for the validity of a testament, and clothed with the same formalities. See LSA-C.C. arts. 1570 et seq. and 1692 et seq.
[4] Testamentary dispositions cannot be established, as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. Succession of Faggard, 152 So.2d 627, 630 (La.App. 2nd Cir.1963).
[1] From that non-certificate, plus the clerk of court's certification that that non-certificate is what is recorded (rather than the required certificate of dissolution), plus the executor's testimony (prompted by testatrix's lawyer) that that non-certificate is the certificate of dissolution, it seems more probable than not that dissolution of the corporation was in fact never accomplished.
[2] Testatrix did begin dissolution of the corporation (after its credit sale of its motel for a note), and apparently thought she did dissolve it. Testatrix's lawyer proffered testimony that testatrix instructed the lawyer to, and the lawyer did, prepare a codicil to "clarify" that the note from the motel sale was to go to appellants; but the lawyer decided that the hospitalized aunt's mental condition was such that to let her sign the codicil would invite litigation, and chose avoidance of possible litigation over the client's exercise of her right to testacy.
[3] See Aubry & Rau, Testamentary Successions and Gratuitous Dispositions (La. Law Inst. trans. 1969), § 694, at p. 329; Planiol, Civil Law Treatise (La. Law Inst. trans. 1959), v. 3, § 3287, p. 597: "the nullity is eliminated, because the surviving beneficiary gets the property without any charge or condition."

See also id., § 3295, p. 602, on double conditional dispositions (cited by Baten v. Taylor, 386 So.2d 333 (La.1979)): "If the testators have such an easy means to make two successive valid dispositions, which differ from a substitution only in form and classification, why do the courts not read this concept into wills, where the testator has omitted to use such a technique because of ignorance of legal subtleties? They do." Compare the "ignorance of legal subtleties" in the case presently before us, and the ease with which the courts could accomplish the testator's intent.
[4] Where the first of two successive legatees is not charged to preserve the legacy for the second, and the second is willed only what the first has left, the French hold there is no prohibited substitution, but only a fideicommissum de residuo or de eo quod supererit. See, e.g., Aubry & Rau, op. cit., § 694, p. 317; Planiol, op. cit., § 3293, p. 599.