13 So.2d 240

Succession of PRICE.

No. 36731.

March 8, 1943.

Terriberry, Young, Rault & Carroll and Harold J. Zeringer, all of New Orleans, for opponents and appellants.

Numa F. Montet, of Thibodaux, for absent heirs, appellants.

Milling, Godchaux, Saal & Milling, of New Orleans, for testamentary executors, appellees.

HAMITER, Justice.

Presented for interpretation by this controversy are certain clauses in the olographic last will and testament, dated March 2, 1937, of Mrs. Anna Margaret Gay Price,

who left at her death a highly solvent estate valued at approximately one and one-half million dollars and consisting of assets located in the States of Louisiana, Missouri, Illinois and Tennessee.

No rights of forced heirs are involved, decedent's only heirs at law being numerous collateral relations.

In due course, Richard C. Plater and his wife, Mrs. Anna Gay Butler Plater, the duly qualified testamentary executors, filed a second provisional account and tableau of distribution. To it oppositions were tendered by some of the legatees named in the will and by the attorneys appointed to represent the absent heirs.

The oppositions were regularly tried; and there was judgment dismissing them and approving the said account and tableau of distribution and ordering it homologated. This appeal by opponents followed.

The record of the proceedings contains a four-page printed copy of decedent's will. This copy, for the purpose of convenience, will be hereinafter referred to in our discussion of the controversy.

After declaring "this to be my last will and testament, revoking all others heretofore made by me", decedent directed that: "All my debts, if any, shall be paid." Following this are instructions as to her burial. Then on the remaining portion of page one, and on pages two and three of the printed copy of the will are to be found provisions relating to particular and special legacies. Among those bequeathed a cash legacy of $1,000 each, if they survived the testator, are seven nieces and nephews, twenty-nine great nieces and nephews, and seventeen great-great nieces and nephews, all of whom are named.

Commencing at the top of page four of the printed copy, the will is completed with the following dispositions and provisions:

"All the rest of my estate of whatever description and wheresoever situated I give and bequeath, One Half to my niece and namesake Anna Gay Butler Plater, or if she is not living, this one half of my estate is to be divided equally among her children, Richard C. Plater, Jr., and Louise Plater Hale.

"One fourth of my estate I give and bequeath to my great niece and namesake Margaret Price Weaver, if she survive me.

"*After all these bequests heretofore bequeathed in this will are carried out and all indebtedness paid then I wish the balance of my estate* to be divided equally between all my nieces and nephews, great nieces and nephews, great great nieces and nephews, except my personal clothing, household furniture, jewelry and such possessions, which I have provided for in a list in my home, which I make as a part of my will and testament. I wish all my possessions amicably divided without anything being put on sale, as I have a horror of publicity.

"I name and appoint as executors of my will, Richard C. Plater and Anna Gay Butler Plater, to serve without Bond, and do not wish an inventory to be made as it is an unnecessary expense.

"I have written this entire will with my own hand, and sign my name to it on this

second day of March, nineteen Hundred and thirty seven (March 2d 1937)."

The above language of the will to which we have given emphasis is the basis for the existing dispute between the executors and opponents, each of the two groups having placed a different interpretation on it. That of the executors is reflected in their provisional account and plan of distribution herein being opposed.

The views of the respective litigants are clearly expressed in the following extract from the well considered written opinion of the trial judge:

"Both parties are in agreement that, in order to ascertain the ' "balance" ' which is to be ' "divided equally between all my nieces and nephews" ', all bequests and legacies found on the first ' "three pages" ' of the will should be paid and discharged, including the debts of the decedent, the costs of burial, etc. But at this point, they part company. Their relative positions being this:

"The executors then propose, out of the residue thus indicated, to allocate *one-half* to Mrs. Plater and *one-fourth* to Mrs. Price (Margaret Weaver) ; and, then, out of the *remaining one-fourth,* to pay the debts of the estate, that is, the costs, fees and charges arising during or as a consequence of the administration of the estate, as distinguished from the debts of decedent existing at her demise.

"Opposing this proposal, the opponents contend that before allocating anything to Mrs. Plater and Mrs. Price, there *should also be paid* and deducted, the debts, fees

and charges arising during or as a consequence of the administration of the estate, that is, the debts of the estate, as distinguished from the debts of the decedent existing at her death."

According to a stipulation of counsel, the mentioned "debts, fees and charges arising during or as a consequence of the administration" include "Federal estate taxes, income taxes for the periods after the death of decedent accruing to the United States, the State of Louisiana and other States, all ad valorem taxes legally levied against the estate in respect of its property, real or personal, inheritance taxes legally levied against the estate in Tennessee and other States, all fees of attorneys, notaries, administrators and executors properly chargeable to the estate in Louisiana, Tennessee and other States, all costs of court chargeable to the estate, and all miscellaneous expenses legally incurred by the estate through its testamentary executors, administrators, agents, representatives and attorneys."

It is further stipulated by counsel that the administration debts, costs and charges will practically exhaust that part of the estate referred to in the disputed third paragraph of the fourth page of the printed will.

Therefore, it is clear that unless the estate expenses and charges are paid before satisfaction of the mentioned bequests of one-half and one-fourth to Mrs. Plater and to Margaret Price Weaver (Mrs. Price), respectively, opponents will receive nothing under the "balance of the estate" disposition.

The true rule in the interpretation of testaments is that "the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." Civil Code, Article 1712; Succession of McBurney, 165 La. 357, 115 So. 618; Delaureal v. Roguet's Succession, 177 La. 815, 149 So. 464. And, to ascertain that intention, the language of the will is generally to be understood in its ordinary popular meaning and without attending so much to the niceties of rules of grammar. Penny v. Christmas, 7 Rob. 481; Hasley v. Hasley, 25 La.Ann. 602.

These fundamental principles of law are recognized by the litigants.

Also they agree that legatees under an universal title, to which group belong the persons given bequests under the provisions found on page four of the printed will, shall contribute with the heirs to the payment of the debts and charges of the succession in proportion to the parts bequeathed to them, Civil Code, Articles 1430 and 1614, except when otherwise regulated by agreement of the parties or by the will of the testator and the rights of forced heirs are not prejudiced. Civil Code, Article 1415.

The executors, in this connection, urge that decedent in her will provided such a regulation, or for the payment of all expenses and charges, when she directs that the balance of her estate is to be divided only after the previously made bequests are carried out "and all indebtedness paid".

Opponents, taking a contrary position, insist that no regulation exists; and they argue that "no other meaning can be attributed to the use by the testatrix of the phrase ' "all indebtedness paid" ' other than to her reference to debts in the opening sentence of the will, leaving the payment of the debts and charges of the succession to be taken care of out of the portion of the estate that is made the subject of all the universal dispositions, that is, that the legatees of the one-half of ' "all the rest of my estate" ', the ' "one-fourth of my estate" ' and ' "the balance of my estate" ' must concur in the payment of the debts and charges of the succession in the manner provided by law", and particularly by Civil Code, Articles 1430 and 1614.

We cannot agree that the phrase "all indebtedness paid" refers exclusively to debts mentioned in the will's opening sentence. The decedent, as opponents state, "was wealthy, and had always been wealthy. She was accustomed to money and the management of her estate." Additionally, she was an educated and intelligent person, as is demonstrated by the language of her will. Being wealthy and educated, she undoubtedly believed that very probably she would leave no unpaid debts at her death; and this, obviously, prompted her qualifying, at the commencement of the testament, the phrase "my debts" with the words "if any". On the other hand, as she was a business woman, it was only natural that she be aware that some expenses and indebtedness would attend the opening of the succession and the distributing of her large estate; in fact the last instruction expressed in the will displays her awareness, it being that she did "not wish an inventory to be

made as it is an unnecessary expense." And it is to be noticed that she in no manner qualified the word "indebtedness" that immediately preceded her direction for distributing the balance of her estate. Rather she referred to it as "all indebtedness".

These circumstances furnish to us the conviction that the testatrix in the commencement of the will, by employing the words "my debts, if any, shall be paid", expresses the desire that the obligations owed by her at the time of death should be settled before any legacies are satisfied. But when she directed near the end of the testament that the balance of the estate be divided equally between all of her nieces and nephews, great nieces and nephews, and great-great nieces and nephews after all bequests theretofore made are carried out and "all indebtedness paid" she was there ordering a division of that portion of her assets which remained following satisfaction of all bequests and payment of both her individual debts and the expenses occasioned by the estate.

In other words, through the disputed language, she was regulating the payment of the succession indebtedness and charges, and was saying, in effect, that there is to be a division of whatever is left after satisfying the specific legacies that she made and after paying "all indebtedness" of every kind, both her personal obligations and those of the estate.

Incidentally, all of the kinsmen scheduled to participate in that balance, except two great-great nieces and a great-great nephew, had already been favored through particular legacies. Each had been bequeathed at least $1,000; although, some were given more than others. Evidently, it was through an oversight that the excepted ones were not likewise remembered, because the entire testament shows an intention to give recognition to each of those kinsmen then living.

Quite significant, also, is the fact that the testatrix did not specifically bequeath to those relatives the full one-fourth of the "rest of my estate" that remained after the bequests of one-half to Mrs. Plater and one-fourth to Margaret Price Weaver, respectively. If she had intended to leave them that entire remaining one-fourth, as appellants contend, it seems to us that she would have used language expressive of that intention, instead of speaking, as she did, of their dividing the "balance" after the carrying out of previous bequests and the payment of "all indebtedness."

Appellants say, additionally, that to construe the disputed paragraph as requiring the payment of all expenses out of the remaining one-fourth of decedent's estate would strike with nullity the disposition made therein and result in decedent's dying intestate with respect to that part; and they call attention to Civil Code, Article 1713 which provides that "a disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." Under our interpretation, the provisions in question do not reveal an unlawful purpose on the part of the testator, such as would render the disposition made therein null. The disposition, as we construe those provisions, is entirely valid. It can be fully and effectively carried out, pro-

vided there remains property of the estate after the satisfaction of the specific bequests and the payment of "all indebtedness"; but apparently there will be no "balance" for division.

The following further argument, to quote from the brief of their counsel, is made by appellants:

" * * * The phrase ' "all indebtedness paid" ', as used by the testatrix, is neither a command nor a direction. It is simply a statement or comment, as it were, on a thing already done, as the testatrix no doubt anticipated that the executors would have theretofore provided for the payment of any ' "indebtedness" ' whether of her own or of her estate. When she used the words at the beginning of the first paragraph on page 4 of the printed copy of the will ' "all the rest of my estate" ', she was treating with a thing of definite size and shape to her own consciousness. At the time she wrote her will the only indebtedness of which she could have been aware was that mentioned by her in the opening paragraph of her will. It was simply as though the testatrix was saying, in effect: I have written my will making numerous bequests and have provided for payment of all indebtedness and I still have undisposed of onefourth of the residuum of my estate. That I want divided equally among all my kin. The use of the words ' "all indebtedness paid" ' is as redundant as the remainder of the opening words of that paragraph ' "after all these bequests heretofore bequeathed in this will are carried out" '. That language is not necessary in the will of the decedent for any purpose whatsoever, and

the words that immediately follow ' "and all indebtedness paid" ' are equally redundant and constitute mere surplusage and can have no bearing whatever upon the intent of the testatrix as evidenced by the language in which she couched the universal dispositions of her will. * * *"

 To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of La Barre, 179 La. 45, 46, 153 So. 15.

Under these authorities we are not justified in holding that the language referred to by appellants is redundant and constitutes surplusage. Obviously, it was purposely and deliberately used; and it must be given effect. By that language, as we construe it, the testatrix expressed the intention hereinabove stated. Furthermore, it is more than a mere statement. It represents a direction or a command, on the fulfillment of which the division of the balance of the estate, whatever it may be, depends.

Perhaps the testatrix thought, when making her will, that such balance would embrace considerable property, and that each of the mentioned numerous collateral relations would further benefit to some extent. She had no idea, undoubtedly, that the ex-

pense or indebtedness would completely exhaust the remaining one-fourth of the "rest" of her estate; although, as pointed out above, she was aware that some expense must of necessity be paid. If she had foreseen its enormity, possibly her testament would have contained language somewhat different from that used.

■ As has been often announced, however, it is not within the province of courts to frame new wills for parties. The judiciary shall only give effect to the expressed, and not the conjectural or probable, intentions of testators. Succession of Langles, 105 La. 39, 29 So. 739. "While in the interpretation of wills the intention of the testator is to be the guide of courts, such intention must be gathered from the quod dixit. Construction must not be placed upon wills so as to put in the mouth of the testator that which he refrained from saying. We must take his will as he has written it. City v. Hardie, 43 La.Ann. 251, 9 So. 12; Ball v. Ball, 40 La.Ann. [284], 285, 3 So. 644." Maguire v. Maguire, 110 La. 279, 34 So. 443, 445.

■ There is a further contention made by the attorney for absent heirs, but not subscribed to by the other opponents, respecting the provisions found on page four of the printed will. He insists "that the provisions of the second paragraph are contradictory of those of the first paragraph and consequently those of the first paragraph are as if not written." We do not notice the existence of the claimed contradiction. It is true that in the first paragraph the testatrix bequeaths one-half of the "rest" of the estate to Mrs. Plater, and then declares that this "one-half of my estate" is to be divided equally among Mrs. Plater's children if she is not living; while in the next paragraph it is said that "one-fourth of my estate" is bequeathed to Margaret Price Weaver, the word "rest" not being there used. When, however, it is considered that the phrase "my estate" found in the conditional bequest to Mrs. Plater's children, has as its meaning the "rest of my estate" as used in the same paragraph, it is clear that the same phrase, when employed in connection with the legacy to Margaret Price Weaver and in the following paragraph, has a similar meaning. Incidentally, this last named legatee has intervened in this proceeding and is contending for only one-fourth of the "rest" of the estate, not for one-fourth of the estate.

The executors' second provisional account and tableau of distribution, which was approved and ordered homologated by the district court, proposes, in our opinion, to distribute the estate of decedent in accordance with the provisions of her last will and testament.

Therefore, for the reasons above given, the judgment is affirmed.

ODOM, J., absent.