111 So.2d 344

Succession of Mrs. Flora Spiller ELLIOTT.

No. 43801.

April 27, 1959.

Reid & Macy, Hammond, for appellant.

SIMON, Justice.

Presented for our interpretation is the true legal meaning and effect of certain provisions and dispositions recited in the olographic last will and testament of Mrs. Flora Spiller Elliott, widow of the late Judge Clay Elliott of the First Circuit Court of Appeals of Louisiana.

The testatrix was survived by one daughter, Miss Charlotte H. Elliott, named as executrix of the will, and by Mrs. Elise Talmadge Stewart, Mrs. Jane Talmadge Burdon, and Mrs. Flora Talmadge Landwehr, the three children of Pauline Elliott Talmadge, a predeceased daughter of the testatrix. Following the probate of the will the executrix filed a final account and proposed plan of distribution of the assets comprising the estate. Mrs. Flora Talmadge Landwehr thereupon filed an opposition thereto.

The recitals of the will are as follows:

"Last Will and Testament:
  "Filed November 8th 1956
    "Lida Morrison Dy Clerk
"Ne Varietur
  "November 8, 1956
    "H. R. Reid, Judge

"I, Mrs. Flora Spiller Elliott being of sound mind, but aware of the uncertainty of life, do make this my last will and testament.

"1st: I desire all my just debts paid.

"2nd: I will and bequeath to my daughter Charlotte H. Elliott and my granddaughter Flora Crane Talmadge, share and share alike my ⅓ interest in and to approximately 400 acres in Tangipahoa and St. Helena Parishes inherited by me from my father and mother deceased.

"3rd: I will and bequeath to my daughter Charlotte H. Elliott the remainder of my disposable portion of my estate.

      " 'Ne Varietur'
        "November 8, 1956
          "H. R. Reid, Judge

"Ne Varietur
  "November 8, 1956
    "H. R. Reid, Judge

"4th: The remainder of my estate after payment of above legacies I desire divided one-half to my daughter Charlotte H. Elliott and one-half

to the children of my deceased daughter Pauline Elliott Talmadge.

"5th: I appoint Charlotte H. Elliott as executrix of this will with seizin and without bond.

"Entirely written, dated and signed in my own handwriting at Amite, La. on this 10th day of June, 1953.

> "Flora Spiller Elliott
> " 'Ne Varietur'
> "November 8, 1956
> "H. R. Reid, Judge"

In submitting her final account detailing the plan of distribution among the heirs, the executrix recognizes that Mrs. Flora T. Landwehr was bequeathed an undivided one-half interest in the testatrix' one-third undivided interest in property described as the "Spiller lands," located in the Parishes of St. Helena and Tangipahoa. However, the executrix contends that said legacy has a value in excess of Mrs. Landwehr's $\frac{1}{12}$th interest in the estate as a forced heir, fully satisfies the legitime allowed her by law, and that therefore she is not entitled to any share or portion of any assets comprising the remainder of the estate. The executrix further contends that under the provisions of the last will she has been specially bequeathed and is entitled to the entire disposable portion of the estate allowed to her under Article 1493 of the LSA–Civil Code, in addition to her share or legitime as a forced heir.

In her opposition, Mrs. Landwehr contends that she is entitled to be recognized as a special legatee under the provisions of the last will bequeathing her a one-half interest of the testatrix' one-third undivided interest in the "Spiller lands;" and that in addition thereto she is entitled as a forced heir to be recognized as owner of a $\frac{1}{12}$th interest in the whole estate. She prayed that the final account so filed should be accordingly amended and reformed.

The district court rendered judgment sustaining the contentions of the opponent and ordered that the final account be amended accordingly and that in all other respects that it be approved and homologated. From this judgment the executrix has appealed.

■ It is fundamental that in the interpretation of wills certain cardinal principles are to be applied. The pertinent ones are as follows:

> "In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained without departing however, from the proper signification of the terms of the testament." LSA–Civil Code, Article 1712.

And to ascertain that intention, the language of the will is generally to be understood in its popular meaning and without attending so much to the niceties of rules of grammar. Penny v. Christmas, 7 Rob.

481; Hasley v. Hasley, 25 La.Ann. 602; Succession of McBurney, 165 La. 357, 115 So. 618; Delaureal v. Roguet's Succession, 177 La. 815, 149 So. 464; Succession of Price, 202 La. 842, 13 So.2d 240, 244.

"A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." LSA–Civil Code, Article 1713.

In the Succession of Price, supra, we said:

"To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of La Barre, 179 La. 45, 46, 153 So. 15." Succession of Kamlade, 232 La. 275, 94 So.2d 257.

The solicitous attitude of our laws towards the rights of forced heirs is found in Article 1493 of the LSA–Civil Code which provides:

"Donations *inter vivos* or *mortis causa* can not exceed two-thirds of the

property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.

"Under the name of *children* are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent."

Viewing the dispositions presently under consideration in the light of the above announced principles, we find that the donations mortis causa could not have exceeded one-half of the property of the testatrix on leaving one daughter and the descendants of a predeceased daughter. Her disposable portion, in other words, was one-half of her estate.

In paragraph two of the subject will, the testatrix bequeathed her one-third undivided interest in 400 acres of land in Tangipahoa and St. Helena Parishes in equal portions to her daughter, the executrix, and to her granddaughter, the opponent. In paragraph three, she bequeathed the "remainder" of the disposable portion of her estate to the executrix. In such a case there can be no doubt that from the very language of paragraph three of the will, wherein the decedent gives and bequeaths "the remainder of my disposable portion of my estate" to the executrix, that the testatrix explicitly and clearly intended that

the bequests in paragraph two of the will were to be taken from the disposable portion of her entire estate. How else could there be a "remainder" of the disposable portion if the bequests in paragraph two were not donations mortis causa of the disposable portion in favor of the named legatees? The record clearly establishes that the value of the disposable portion does not exceed the amount fixed by law and necessarily is not subject to our rules of collation or reduction in respect to the legitime of the forced heirs. The heirs do not raise this issue. And it necessarily follows that there exists no conflict or repugnancy in the dispositions made under paragraphs two and three of the will. Rather it presents a harmonious whole, consistent with the clear intent of the testatrix to bequeath the full disposable portion of her estate, a full one-half thereof to her named legatees.

It will be observed in paragraph four of the will that the testatrix disposed of the "remainder of my estate after payment of the above legacies," by providing therein that "one-half to my daughter Charlotte H. Elliott and one-half to the children of my deceased daughter Pauline Elliott Talmadge." This provision does nothing more than confirm the legitime of forced heirs under our law, effecting an equal

distribution of her estate among her surviving daughter and the three children of a predeceased daughter, save and except the preference shown the executrix and opponent through the special bequests herein recognized and made enforceable. We deem as most relevant our pronouncement in Miller v. Miller, 105 La. 257, 29 So. 802, 804;

> "We have to construe his (the testator's) intention by the light of its (the will's) general provisions and of the law, of which he is to be presumed to have had knowledge, and by which he must be presumed to have been guided. We must assume that the testator was aware of the legal rights of his heirs, and the extent of his own power of disposition of his property." Succession of Gomez, 226 La. 1092, 78 So.2d 411.

The lower court, in its formal judgment and written reasons has correctly assessed and fixed the proper distribution of this estate among the legatees and heirs, and its recognition of opponent's right to the special legacy designated in the will in addition to her legitime meets with our approval.

Accordingly, the judgment appealed from is affirmed.