117 So.2d 286 (1960)
Samuel H. BUHLER
v.
John VILLEC and Employers' Liability Assurance Corp., Ltd.
No. 21277.
Court of Appeal of Louisiana, Orleans.
January 18, 1960.
Rehearing Denied February 1, 1960.
Certiorari Denied March 22, 1960.
*287 James H. Drury and Felicien P. Lozes, New Orleans, for defendant and appellants.
Eugene D. Brierre, New Orleans, for plaintiff and appellee.
REGAN, Judge.
Plaintiff, Samuel H. Buhler, instituted this suit against the defendants, John Villec and his liability insurer, Employers' Liability Assurance Corporation, Ltd., endeavoring to recover the sum of $303.34, representing property damages incurred as the result of a collision in the intersection of North Carrollton Avenue and Dumaine Streets in the City of New Orleans on April 5, 1955 at 4:55 p.m.
Defendants answered and denied that Villec was guilty of any negligence, but asserted that the sole cause of the accident was the fault of the plaintiff; in the alternative, the defendants pleaded his contributory negligence.
From a judgment in favor of plaintiff and against defendants in the amount of $303.34, they have prosecuted this appeal.
The record reveals that one phase of this appeal was heard by us before,[1] wherein we noticed that the suit tried in the Civil District Court, upon which the defendants' plea of res adjudicata was based in the First City Court, did not appear in this record; therefore, in furtherance of the ends of justice, we remanded the matter so that the suit entitled "Carmelite S. Sweeney v. Samuel H. Buhler, et al" could be offered in evidence to support the plea. This has been accomplished and the complete record is now before us for our consideration.
The record reveals that North Carrollton Avenue is a boulevard composed of two roadways, which are separated by a neutral ground. Dumaine is a paved two-way street, and where it intersects Carrollton Avenue, traffic moving therein is regulated by a stop sign at both approaches into Carrollton Avenue from Dumaine Street.
Plaintiff testified that he was driving in the left lane adjacent to the neutral ground in the Canal Street bound roadway of North Carrollton Avenue at a speed of approximately 25 to 30 miles per hour prior to the accident. As he neared the Dumaine intersection, he noticed a Public Service bus stopped close to the downtown lake corner curb of North Carrollton and Dumaine. He was familiar with this intersection and considered it hazardous; therefore, he decelerated to a speed of between 20 and 25 miles per hour. Plaintiff related that after he had entered the intersection he then saw the defendant's truck emerge from behind the bus and he failed to notice the defendant sooner because his vision into Dumaine Street was obstructed by the bus. The left bumper of defendant's truck was driven into the right front door of plaintiff's vehicle and either or both vehicles moved toward the neutral ground. In order to avoid a pedestrian who was standing on the uptown neutral ground within several yards of the impact, plaintiff endeavored to steer to the right; however, this effort was unsuccessful and the litigation involving the injured pedestrian formed the subject matter of the other suit, which we have referred to hereinabove.
Louis Landrieu, an independent eyewitness, appeared on plaintiff's behalf and stated that he was following the plaintiff, who was driving in the left lane while he *288 was moving in the right lane of North Carrollton Avenue at a speed of approximately 20 to 25 miles per hour. As he approached the intersection of North Carrollton and Dumaine, he noticed the bus parked on the downtown lake corner and when he was 50 or 60 feet from the intersection, he could see the defendant's truck moving in Dumaine toward Carrollton. Momentarily he lost sight of the truck because the bus obstructed his view. He then saw defendant drive into the intersection and collide with the plaintiff's car.
Conversely, defendant related that he approached Carrollton Avenue from plaintiff's right in Dumaine Street and stopped when he reached the traffic sign which controls the entrance into the intersection. He estimated he waited there three or four minutes after the bus pulled to the curbing and stopped on an angle. His laborious testimony on crucial issues is, to say the least, confusing, but briefly, as we understand it, he asserted that he could see around both the left and right sides of the bus and the path across Carrollton Avenue was clear. He then more pertinently related that when he had traversed three-fourths of this intersection, he looked to his right where he noticed a pedestrian on the neutral ground who appeared to be in a state of panic; he quickly turned his vision to the left in order to ascertain what was causing the pedestrian to panic. It was only then that he became aware of plaintiff's vehicle in front of him and, of course, the vehicles collided.
A. Troyani, a resident of Mississippi, testified on defendants' behalf in the other suit, which was tried in the Civil District Court and his testimony adduced therein was offered in evidence herein. He, in substance, asserted that Villec stopped in obedience to the stop sign, which regulated Dumaine Street traffic at the intersection; that his path across North Carrollton Avenue was clear of traffic when he entered the roadway; and finally, he assumed that plaintiff was driving in Carrollton Avenue at an excessive speed; however, he conceded that he did not see plaintiff's vehicle before the accident occurred.
The nebulous accusation of excessive speed is not substantiated by either the weight of the testimony or the physical facts. The evidence preponderates to the effect that neither vehicle was speeding and both vehicles stopped a relatively short distance from the point of impact.
Plaintiff simply contends that the defendant entered the intersection without looking, or if he did look, he entered at a time when his vision of the traffic was either totally or partially obstructed by the bus and that this negligence was the proximate cause of the accident.
Defendant initially insists that a review of the record of the case tried in the Civil District Court clearly reveals that the claim asserted herein is res judicata; that the issues adjudicated in that case were identical to those raised here; and that the pleadings filed therein by both defendants posed a question for solution by the Court relating to the negligence of both parties who are litigants in the second suit herein. Hence, the identical dispute exists in the second suit which has already been judicially disposed of.
Defendants secondly insist that any rights which plaintiff may have herein are set off by the greater sum owed to defendant, Villec's insurer, as a result of the judgment which was rendered in solido against Villec and Buhler by the Civil District Court, which was in excess of $2,600 and to which plaintiff herein contributed in liquidation thereof the sum of $400.
In the last analysis, defendants plead that plaintiff was negligent in failing to maintain a proper lookout and in driving at an excessive rate of speed, which negligence constituted the proximate cause of the accident.
The solution of the questions posed by the merits of this case creates very little, if any, problems; however, we have given considerable thought to the plea of res *289 judicata because if there is any topic of law emanating from Louisiana jurisprudence which is not res judicata, it is the subject of res judicata itself.
"Under the common law concept of res judicata, if the cause of action in two suits is the same, the judgment rendered in the first is conclusive of all issues pleaded, or which might have been pleaded, by the parties in the first suit. Under Anglo-American law, however, res judicata is supplemented by the estoppel by judgment, which comes into play when the causes of action in the two suits are not the same. Under the latter doctrine, the prior judgment operates as an estoppel only as to matters in issue or points controverted and determined in the first suit.
"As long as the legal profession in Louisiana remained bilingual and the works of the French commentators remained available to Bench and Bar alike, the civilian rules of res judicata were applied without difficulty to the litigated cases. But when the reading knowledge of French was no longer considered a professional requisite in this state, the legal literature of England and America was drawn into the resulting vacuum and increasingly provided the bases for the Louisiana decisions on res judicata. * * *"[2]
Therefore, in this area of our law, Corpus Juris Secundum ostensibly became almost as authoritative as the "solemn expression of legislative will"[3]. However, the cases of Hope v. Madison[4] and Quarles v. Lewis[5] have to a great extent clarified this area of our law and enforced the codal requirement that the demand in both suits must be the same in order for the plea of res judicata to apply.
In any event the law applicable to this subject is LSA-Civil Code, Article 2286, which reads:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
Generally speaking, there are only three exceptions[6] to the rule that res judicata does not apply unless there be an identity of demands, parties and causes of action as prescribed by the foregoing article of our Code. More specifically, since the object of the first suit instituted by the plaintiff, Carmelite S. Sweeney, against the defendants, Buhler and Villec, was to recover damages for personal injuries incurred by a pedestrian as a result of an intersectional collision between the defendants, it appears clear to us that the demands, parties and cause of action in this suit instituted by plaintiff, Buhler, against defendant, Villec, to recover property damages incurred by Buhler's vehicle as a result of their collision, is not the same as that in the first action.[7]
We are therefore of the opinion that the plea of res judicata interposed by the defendants is without merit.
With respect to the second issue raised by the defendants against the plaintiff, we are of the opinion that this claim is also without merit. It was not even asserted *290 by the defendant in the lower court and in consequence thereof, no facts pertaining thereto were offered in evidence in the court of original jurisdiction. Therefore, we are unable to consider this matter on appeal.
Turning our attention to the merits, the foregoing resume reveals that only questions of fact were posed for the trial court's consideration. The judge thereof certainly accepted both plaintiff's and his witnesses' version of the manner in which the accident occurred, and therefore, concluded that the plaintiff was free of any negligence which contributed to the accident and the proximate cause thereof was the negligence of defendant. He obviously discounted the testimony of Troyani, which likewise taxed our credulity and then reasoned that the plaintiff, who was driving in the left lane of North Carrollton Avenue, a right of way street, and who possessed knowledge of the location of the stop sign in Dumaine Street, had a right to assume that the defendant, who approached the intersection from the less favored street, would observe the law and not only bring his vehicle to a complete stop before entering the intersection, but that he would comply with an additional obligation which devolved upon him at that time, and that was to carefully look and thus ascertain that his path was clear before attempting to cross this avenue. The bus, of course, obstructed his view and he entered this intersection at a time when it was obviously not safe to do so.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
No useful purpose would be served by a laborious analysis of the testimony appearing in the record. The trial judge accepted the plaintiff's version of the manner in which the accident occurred and our examination convinces us that the evidence preponderates in his favor, and the judgment is therefore correct.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
McBRIDE, J., takes no part.
NOTES
[1] Buhler v. Villec, La.App.1958, 102 So.2d 417.
[2] 19 LLR 390 (1958-59).
[3] LSA-C.C. Art. 1.
[4] 1940, 194 La. 337, 193 So. 666.
[5] 1954, 226 La. 76, 75 So.2d 14.
[6] See Himel v. Connely, 1940, 195 La. 769, 197 So. 424, 427.
[7] Quarles v. Lewis, supra, the rationale of which was not overruled by California Company v. Price, 1957, 234 La. 338, 99 So.2d 743, according to the author of that opinion.