LANDRY, Judge.
This is an action for declaratory judgment instituted by Mr. and Mrs. Lenus A. Giroir, against the heirs of the late Benjamin Dumesnil, seeking plaintiffs’ recognition as owners of certain real property purchased from Marie Boudreaux Dumesnil, widow of the aforenamed decedent, who allegedly acquired same as universal legatee under the last will and testament of her said deceased spouse. Named defendants are the collateral relations of decedent, Benjamin Dumesnil, who died 'leaving no ascending or descending relations. The learned trial court sustained pleas of res adjudicata interposed on behalf of defendants and dismissed plaintiffs’ suit. From this unfavorable adjudication plaintiffs have appealed.
The demand herein asserted by appellants depends entirely upon an interpretation of a certain clause in decedent’s will, which appellants maintain bequeathed subject property to the widow in full owner•ship. On the other hand, defendants contend the will merely bequeathed decedent’s widow a life usufruct in the property in ■dispute and that defendants, as collateral relations of decedent, have inherited the naked ownership thereof inasmuch as the property in question admittedly belonged to decedent’s separate and paraphernal estate.
In addition to their pleas of res adjudi-cata, defendants filed pleas of prematurity and non-joinder and exceptions of improper action all of which were preliminarily overruled pursuant to written reasons appearing of record. An exception of prescription filed on behalf of appellees was not ruled on by the trial court. Defendants also filed an answer incorporating a reconventional demand for damages and the hereinabove mentioned plea of res ad-judicata. The judgment of the trial court sustaining defendants’ plea of res adjudi-cata does not mention appellees’ reconven-tional demand and neither does it rule on defendants’ exception of prescription.
We note that appellants’ brief makes no reference to the action of the trial court’s sustaining defendants’ plea of res adjudi-cata. Instead, appellants’ brief is devoted entirely to a defense of the trial court’s ruling which, over appellees’ timely objection, admitted parol evidence relied on by appellants as constituting proof of testator’s intent to leave subject property to his widow in full ownership. However, in oral argument before this court, esteemed counsel for appellants assailed the action of the trial court in sustaining defendants’ plea of res adjudicata therefore the discussion which follows will consider the argument thus made.
While the circumstances leading to this litigation are not particularly complicated, their narration in detail sufficient to make the issues clear, must, of necessity, be somewhat protracted.
On August 7, 1918, decedent, Benjamin Dumesnil, executed his last will and testament in nuncupative form by public act in the French language, containing a clause admitted by all concerned to be correctly translated as follows:
“I bequeath and give to my said wife, Marie Boudreaux, the enjoyment and usufruct during her life of all the property, movable and immovable (of which I can dispose under the law) of any nature and under any title whatsoever which I may possess at my death for her to do with, enjoy and dispose of as she pleases, and as a thing belonging to her.”
*92 On March 18, 1940, testator died survived by his aforenamed widow and certain collateral relatives consisting of six children of a predeceased brother and one child of a predeceased sister. Decedent’s will was presented for probate on May 25, 1940, in the matter entitled “Succession of Benjamin Dumesnil”, Probate No. 2313 of the Seventeenth Judicial District Court for the Parish of Terrebonne. An attorney, Robert B. Butler, Jr., was appointed to represent Dolzie Lagrange, an absent heir, the sole child of decedent’s predeceased sister, Constance Dumesnil Lagrange. Decedent’s will was duly probated following which inventories were made showing the estate consisted of both separate and community property, the former category including the property comprising the subject matter of this litigation. Subsequently, on September 5, 1940, decedent’s surviving widow in community, petitioned the Court for recognition as universal legatee under the will and surviving widow in community and in such capacities she be recognized as owner and sent and put into possession of all property, separate and community, depending upon the succession.
The curator ad hoc appointed to represent the absentee, Dolzie Lagrange, opposed the widow’s petition to be sent into possession of decedent’s separate estate as universal legatee contending the herein-above quoted portion of the will did not bequeath Mrs. Dumesnil ownership of any property, but merely devised a life usufruct upon decedent’s estate. On this premise it was contended that decedent’s will conveyed no interest in said testator’s separate estate, merely a usufruct thereof and that the naked ownership of all decedent’s separate estate passed to his collateral heirs, including Lagrange who, as the sole heir of decedent’s hereinabove named predeceased sister, inherited one-half thereof subject to the usufruct thereon in favor of Mrs. Marie Boudreaux Dumesnil. No opposition to the widow’s petition or other appearance was made on behalf of any of the heirs of decedent’s predeceased brother, Francois Dumesnil,
It being conceded by counsel for the absentee Lagrange that under any interpretation of decedent’s will the widow was. entitled to full ownership of all community property inasmuch as Dumesnil left nO' direct ascending or descending relations,, the attorneys for Lagrange and Mrs. Dumesnil presented a joint motion to the court pursuant to which judgment was. rendered September 5, 1940, deferring disposition of decedent’s separate estate sine-die (sic), fixing the inheritance taxes due by the widow on the community estate and recognizing the widow as owner and sending her into possession of the community-assets.
The succession proceedings remained in-the status indicated until almost seven years later when, on February 27, 1948, Claude Ellender, Esquire, was appointed Judge ad Hoc in place of the district judge who had been attorney of record for Mrs. Dumesnil, Executrix of decedent’s estate, and had in the meantime ascended' to the bench. The issues presented by Lagrange’s opposition were then fixed for trial before the aforesaid Judge ad Hoc. Upon trial of the issues thusly presented no attempt was made to introduce parol evidence for the purpose of explaining the terms of the will. Following trial, the-court, in a well reasoned “opinion and judgment”, held that the only interpretation of decedent’s will which could give effect to all the terms and provisions of the controversial bequest was that the testator thereby disposed only of the usufruct of his property and the naked ownership thereof fell to his heirs at law. The judgment decreed the absentee, Lagrange, be recognized as an heir at law of decedent and as such declared owner of an undivided one-half interest in all decedent’s separate property subject to the usufruct thereof in favor of the legatee, Marie Boudreaux Dumesnil. This judgment rendered September 23, 1947, in the Succession of Benjamin Dumesnil, forms the *93 basis of defendants’ plea of res adjudicata. No further disposition was made of decedent’s separate estate in said succession proceedings; the inheritance taxes have never been fixed or paid thereon; and no heir or legatee has been sent and placed in possession thereof, either as owner or usufructuary.
By act of sale dated April 18, 1957, Mrs. Marie Boudreaux Dumesnil, purportedly conveyed subject property to Mrs. Nellie Marie Arceneaux, wife of Lenus Giroir. The transaction was duly recorded February 6, 1958, on which same date plaintiffs instituted this action to establish their alleged ownership emanating from said deed.
Appellants’ petition is directed against the surviving collateral descendants of Benjamin Dumesnil named in the original succession proceedings and the descendants of those who have since died. Plaintiffs allege appellees are pretending and claiming to be owners of the described properties and of the minerals underlying same. In the alternative, appellants contend that if they are found to have no right to an undivided one-half interest (because of the judgment rendered September 23, 1947, recognizing Lagrange’s undivided one-half ownership), they are nevertheless entitled to be recognized as owners of the remaining undivided one-half interest.
Defendants’ plea of non-joinder suggests that the testamentary executrix is a necessary party since there has been no judgment of possession relative to decedent’s separate estate and no inheritance taxes have been paid thereon. The plea of prematurity is founded on the premise that inasmuch as the separate estate of decedent is still under administration and the inheritance taxes remain unpaid, the property remains in custodia legis and, consequently, ownership cannot be determined in a separate action. The exception of improper action advocates the proposition that having a proper remedy by means of one of the recognized real actions provided for by law, plaintiffs may not avail themselves of the procedure provided by the Declaratory Judgment Law.
It is worthy of note that in the present action an attorney at law was appointed to represent absent defendants, and, by consent, the lower court ordered that all pleadings filed on behalf of defendants, represented through counsel of their own choice, be referrable to the absent defendants represented by court appointed counsel.
Our learned brother below disposed of all the foregoing pleas and exceptions at one time. The plea of non-joinder was-overruled on the ground Mrs. -Dumesnil was not a necessary party considering she had disposed of all her interest to plaintiffs. The plea of prematurity and the exception of improper action were overruled on the theory that resort to the Declaratory Judgment Act was properly made herein inasmuch as such procedure avoided a multiplicity of actions.
Defendants’ exception of prescription (which, as previously stated was not ruled upon below) is based on the five year period allowed by LSA-C.C. Article 3542' for asserting the alleged nullity of a testament, and the ten year period prescribed by LSA-C.C. Article 3544 for institution of all personal actions for which provision is not otherwise made. Although these prescriptive pleas are now re-urged we need, not consider them or the several exceptions-ruled on by the trial court in view of the hereinafter expressed opinion relative to-appellees’ pleas of res adjudicata and our determination of the matter on the merits.
In oral argument before this Court, esteemed counsel for appellants correctly suggests the rule of res adjudicata is inapplicable unless the parties to the former decree are identical to those in the matter wherein the plea of res adjudicata is advanced. Plaintiffs, however, stand in the shoes of their author in title inasmuch as-appellants acquired from their ancestor in title -only such rights as the former pos *94 sessed and plaintiffs were subrogated only to those rights their vendor enjoyed.
Our jurisprudence is unquestionably settled to the effect that matters once finally determined by a court of competent jurisdiction can never again be called into question by the parties, or their privies, notwithstanding the decree may have been erroneous and subject to certain reversal upon appeal. California Company v. Price, 234 La. 338, 99 So.2d 743; Allen v. Commercial National Bank in Shreveport, La.App., 138 So.2d 252.
A judgment determining the property .rights of a vendor and final as to him, is equally binding on the purchasers and assignees of such vendor. Able counsel for appellants suggests the inapplicability herein of the rule of res adjudi-cata because some defendants in the present .action were not parties to the opposition presented by Dolzie Lagrange in the succession proceedings of decedent Benjamin Dumesnil. It is a long settled rule that a judgment does not lose the force and authority of res adjudicata merely because additional parties are joined in the subsequent action. Johnson v. Lemons, La.App., 157 So.2d 752; Ledoux v. Burton, 30 La.Ann. 576.
Undoubtedly appellants have anticipated application of the principle of res adjudicata with respect to their rights as opposed to those of the heirs of Lagrange, hence their alternative plea for recognition as owners •of the undivided one-half interest now claimed by those appellees who were not joined or represented in the opposition filed in the Succession of Benjamin Dumesnil by Lagrange.
Astute counsel for appellees maintains that our failure to apply the principle of res adjudicata to plaintiffs’ claims against all defendants will have the practical effect of destroying the principle of finality of a thing adjudged and render all recorded documents meaningless, without effect and amenable to attack at any time thereby obliterating all stability relative to public records. We do not so view the results of our holding that the principle of res adjudi-cata tendered herein on behalf of all defendants is applicable only to the rights of those appellees claiming through decedent, Dolzie Lagrange.
It is elementary law that the principle of res adjudicata applies only where there is a similarity of demands, parties and causes of actions. If either of the three essential elements are lacking the plea of res adjudicata is unavailable. Pacific Finance Company of Caddo v. Benson, La.App., 149 So.2d 239; Buhler v. Villec, La.App., 117 So.2d 286; LSA-C.C. Article 2286. It is of the utmost significance that of all parties named defendant herein only the heirs of Lagrange (through their now deceased ancestor) can establish an identity of parties in the former action against Mrs. Dumesnil. Since no other collateral relations of decedent Dumesnil were joined or intervened in the Lagrange opposition the prior adjudication settled only Lagrange’s rights as opposed to Mrs. Dumesnil. Notwithstanding notification of Dumesnil’s remaining heirs of the pendency succession proceedings, they were neither joined nor made appearance in the opposition proceedings, consequently their rights were not and indeed could not have been determined therein. That the basis of the widow’s claim against the heirs who offered no opposition may have been identical to the foundation of her claim against Lagrange is of no moment. It nevertheless remains no adjudication of the claims of the unjoined parties was made consequently we have an absence of the indispensable element of similarity of parties which obviates application of the rule of res adjudicata as to those parties not appearing in both actions.
Nor do we find that the present matter falls within any of the three recognized exceptions to the rule of res adjudicata pronounced in LSA-C.C. Article 2286, all of which exceptions relate to matters which could have been asserted in the first action *95 but were not presented by the party pleading res adjudicata in the subsequent suit. See Pacific Finance Company of Caddo v. Benson, La.App., 149 So.2d 239; Buhler v. Villec, La.App., 117 So.2d 286. Neither of the cited authorities (nor any other so far as we can determine from our research) recognizes an exception to the requirement of identical parties as an essential element of the plea of res adjudicata.
■ Learned counsel for appellants cites and relies upon California Company v. Price, 234 La. 338, 99 So.2d 743, which applied the doctrine of judicial estoppel. Counsel argues that rule announced therein is applicable in the instant case. We note, however, identical parties were involved in the cited authority which held that “the judgment in such a suit (i. e. a concursus proceeding) adjudicates title to the land or royalty right as between the defendants who appear and claim it adversely to each other.” (Emphasis supplied by the Court.)
In Quarles v. Lewis, 226 La. 76, 75 So.2d 14, which contains a comprehensive review of the various instances wherein the effect of res adjudicata and judicial estoppel have been judicially extended, it is clearly made to appear that these instances relate to cases in which the rule is applied to matters which could have been pleaded but were not. We note that this is so even in the leading, often cited and sometimes criticized case on estoppel, Heroman v. Louisiana Institute of Deaf and Dumb, 34 La.Ann. 805.
If res adjudicata is applied to the claims of Mrs. Dumesnil adverse to those heirs not made parties in the former action, a new exception to the rule, namely, one dispensing with the requirement of identity of parties, must be herein established. Such a result would have to be accomplished in the very teeth of a long line of jurisprudence which holds the principle of res adjudicata must be strictly construed and cannot be applied if there is absent one of the three hereinabove mentioned essential elements.
We conclude therefore our esteemed brother below correctly sustained the principle of res adjudicata with respect to the-one-half interest claimed by the heirs of' Dolzie Lagrange. As to the remaining one-half interest claimed by those heirs of Dumesnil who were not represented and made no appearance in the trial of the petition and opposition taken up in the succession proceedings, the plea of res adjudicata. should have been overruled.
The foregoing views make necessary our consideration of appellants’ alternative-claim to the undivided half interest inherited by the heirs other than Dolzie Lagrange which question requires an interpretation of the hereinabove quoted clause in decedent’s will.
: In substance counsel for appellants contends the words “for her to do with, enjoy and dispose of as she pleases, and as a thing belonging to her” indicate intent on. testator’s part to devise full ownership of the property, and if any ambiguity in the bequest results from the use of the phrase-“usufruct during her life”, extrinsic evidence may be resorted to in order to establish the true intention of the testator.
In support of this argument counsel for appellants cites and relies upon LSA-C.C. Article 1714, which provides as follows:
“Art. 1714. Ambiguity as to legatee
“Art. 1714. In case of ambiguity or obscurity in the description of the legatee, as, for instance, when a legacy is bequeathed to one of two individuals bearing the same name, the inquiry shall be which of the two was upon terms of the most intimate intercourse or connection with the testator, and to him shall the legacy be decreed.”
Predicated on the foregoing codal authority, counsel for appellants contends extrinsic evidence was admissible to establish testator’s intent to constitute his widow as legatee to whom title was conveyed in full ownership. Considerable paro-l evidence was adduced by plaintiffs over and subject to general and special objections made thereto on behalf of appellees, the purpose *96 of said evidence being to establish that by the bequest noted, testator intended to constitute Mrs. Dumesnil as a legatee to whom ownership rather than a usufruct was bequeathed. Some evidence was presented with the view of showing testator’s estrangement from his relatives. It will be recalled that all evidence hereinafter discussed was timely objected to by appellees.
One witness, who was 86 years of age, testified he was one of the witnesses to the execution of the testament in 1918. He recalled very clearly that the will made 40 years previously disposed of all decedent’s estate in favor of testator’s wife.
Mrs. Dumesnil in substance testified she and her husband made identical reciprocal wills at the same time, it being the mutual intention of both husband and wife to leave their respective estates to the other.
Joseph Daspit, 86 years of age, a friend of decedent, testified that some time prior to decedent’s death, he purchased a small heifer from decedent for the price of $12.00 and was instructed by decedent to pay the money to Mrs. Dumesnil as decedent was not then feeling well and Mrs. Dumesnil would own everything at his death.
Mrs. Hilda Prejean Gissing testified she had been a neighbor of Mr. and Mrs. Dumesnil and boarded in their home for a period of three or four months, during which time she was requested by decedent to drive decedent and his wife to Houma, to verify the will which was recorded in the office of the Clerk and Recorder and determine whether execution of a new will was necessary to insure that Mrs. Dumesnil would get decedent’s property at his death. On this occasion decedent consulted an attorney who assured decedent that Mrs. Dumesnil would inherit everything. In this regard it is to be noted the attorney named by Mrs. Gissing was called as a witness and •denied any recollection of the incident. He further stated he was unable to read or speak French and would not, under any •circumstances, have attempted to advise anyone as to the purport of a will written in the French language. Mrs. Gissing further testified that when she took Mr. Dumesnil to the courthouse, he communicated to her his intention and desire to leave everything to his wife.
Mrs. Stella Daspit Chauff testified she was a registered nurse and in such capacity attended decedent for approximately two months during his last illness. She further stated she had known decedent a long time prior to commencement of his last illness and that during the two month interval she attended him decedent, on one occasion when he was very angry, stated he wanted no one except his wife to inherit anything from him.
Mrs. Louis Breaux, an informally adopted child who was reared by the Dumesnils from her infancy, testified decedent always said he wanted his property to go to his wife.
Plaintiff, Lenus Giroir, testified he was also an informally adopted child of the Dumesnils and resided with them until he was approximately 16 years of age. He further stated that during decedent’s last illness decedent requested him to go to the courthouse and verify whether the recorded will left everything to Mrs. Dumesnil. Giroir also stated that on this occasion he and decedent were shown the will and a third person at the courthouse (his qualifications not being shown) was consulted and after reading the will, assured Mr. Giroir that everything would go to Mrs. Dumesnil.
Before seeking to resolve the question of interpretation of decedent’s will, we deem it advisable to first set forth the general rules pursuant to which testaments must be construed.
The general rules applicable to interpretation of testaments are to be found in LSA-C.C. Articles 1712-1723, inclusive. Among the cited codal provisions the following are of particular application:
“Art. 1712. Intention of testator
“Art. 1712. In the interpretation of acts of last will, the intention of the *97 testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.”
“Art. 1713. Sense which gives effect
“Art. 1713. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.”
“Art. 1715. Interpretation to ascertain intent
“Art. 1715. When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.”
Where there is ambiguity in the will, extrinsic evidence of any and all circumstances which may aid in the discovery of the testator’s intention must be admitted. Succession of Montegut, 211 La. 112, 29 So.2d 583. This rule, however, applies only where the terms of the will are ambiguous. Succession of Smart, 214 La. 63, 36 So.2d 639. It is to be noted that Article 1712, supra, expressly proscribes an interpretation which departs “from the proper signification of the terms of the testament.”
Peculiarly applicable to the case at bar is the following language which we approvingly quote from Succession of Rusha, 158 La. 74, 103 So. 515:
“A considerable amount of conflicting testimony as to verbal expressions by the deceased, concerning her intentions testamentary * * * was admitted by the trial judge over the objection of the executor.
“But we think all such evidence should have been excluded, or at least should ultimately have been disregarded.
“Testamentary dispositions can be made only in writing in the form and manner prescribed by law for wills. Hence testamentary dispositions can never be established, as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. And it is but one step from the explaining of a written testamentary disposition by proof of the verbal declarations of the testator, to the establishing of a verbal testamentary disposition-, the line of demarcation between the two being very fine, if indeed it exists at all.
* # * * * ‡
“But in any event, to whatever extent parol evidence may be admissible for the purpose of explaining ambiguous terms in a testament, it can never serve to depart ‘from the proper signification of the terms of the testament.’ R.C.C. art. 1712.”
Capable counsel for appellants cites Succession of Fertel, 208 La. 614, 23 So.2d 234, in support of the principle that it is reasonable and natural to presume a testator intends to dispose of his entire estate, and there is no ground for presuming he intended to die intestate as to any part of his estate when the language in his testament clearly evidences intent to dispose of all his property. It was clearly recognized, however, in the subsequent case of Succession of Montegut, second appeal, 217 La. 1023, 47 So.2d 898, that no conflict exists between the rule announced in Succession of Fertel, supra, and LSA-C.C. Article 1717 which provides as follows:
“Art. 1717. Uncertainty as to quantity bequeathed
“Art. 1717. If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least.”
We further observe language in Succession of Montegut, supra, which holds the rule of the Fertel case, supra, applicable only in those instances where the will “clearly carries the whole.” The Montegut *98 case, supra, further held that in the event of doubt, that interpretation of a will which will more closely approximate the legal order of distribution, is to be preferred.
Moreover, in Fontenot v. Vidrine, 218 La. 979, 51 So.2d 597, it was held there is no implication or presumption of intent to bequeath naked ownership along with the usufruct of property when testator bequeathed the usufruct of his estate and made no mention of the naked ownership thereof.
Also appropos the matter of interpretation before us is the following language appearing in Succession of Blue, La.App., 126 So.2d 195:
“The function of the court xs to construe the will as written, to intei'pret what the testatrix said, not what we think she meant to say, and to give effect only to the express and not to the conjectural or probable intention of the testatrix. Succession of Montegut, 217 La. 1023, 47 So.2d 898; Succession of Price, 202 La. 842, 13 So.2d 240. We must give effect only to what is indicated by the language used in the will and restrict ourselves to this language itself when the intention of the testatrix can be ascertained therefrom. LSA-Civil Code Arts. 1712, 1715; Succession of Simo, 205 La. 592, 17 So.2d 889.”
It is well established law that the rule of testamentary interpretation to the effect the intention of the testator must be ascertained, is subject to the qualification that such interpretation shall be undertaken without departing from the proper signification of the terms of the testament. Succession of Rougon, 223 La. 103, 65 So.2d 104; Succession of Price, 202 La. 842, 13 So.2d 240; In re Succession of Abraham, La.App., 136 So.2d 471. Succession of Brown, La.App., 146 So.2d 817.
It is also the prevailing rule that in order to ascertain testator’s intention, the language of the will must generally be understood in its ordinary popular meaning without attending so much to the niceties of the rules of grammar. Succession of Elliott, 237 La. 457, 111 So.2d 344; Succession of Price, 202 La. 842, 13 So.2d 240; Succession of Vatter, 192 La. 657, 188 So. 732.
At the outset of the trial of this case, the controversial bequest was read aloud in French to the witnesses who severally professed “some” or a “pretty good” understanding of spoken French but none of whom claimed a thorough knowledge of the language. Each witness was asked his understanding of testator’s intention from the language heard. All apparently understood the latter portion of the bequest and replied they construed it to mean the widow was to receive the property. None, however, could explain what was meant by a usufruct. The record does not reveal that the word “usufruct” in French has an ordinary, usual and customary meaning other than its technical significance as a legal term. We believe the weight of such testimony elicited from obviously unlearned witnesses to be very slight indeed and of no more persuasive force than the testimony of unlearned witnesses, who cannot read and write English, seeking to interpret a will read to them in the English language.
We consider it significant that the word “usufruct” is not an ordinary or common word but rather a technical legal term. Moreovei", it differs vastly from those legal terms which, though purely technical in nature, nevertheless possess non-technical significance and customary usage and meaning among laymen. The phrase “usu-fi-uct during her life” (or as sometimes translated in the record “usufruct during her life span”) has a definite, certain and invariable meaning in law. We are unaware of any certain meaning attributable to it in lay terminology.
At this juncture we deem it expedient to cite with approbation the following ob *99 servations made by the Honorable Judge ad hoc, Ellender, in the judgment rendered in the succession proceedings below, with which we concur inasmuch as the pronouncements therein contained accord with the laws of interpretation pertinent to the issue under consideration:
“The position of the legatee, who is also the executrix, is that although the first portion of the disposing part treats of a usufruct the latter part thereof contradicts the former, and since it was last written, it is presumed to be the will of the testator. Particularly is this intention discernible, since the legatee was vested with the right ‘to do with, enjoy, and dispose of as she pleases and as a thing belonging to her’. The executrix and legatee reasons that this unlimited right can only be exercised by one who own (sic) the thing in fee.
* * * * * *
“The first part of the disposition is clear. The legatee was given the ‘enjoyment and usufruct’ of the property. Usufruct is a certain defined type of ownership under the law. Several chapters of the Code treat of usufruct. It can be created under all sorts of titles (Article 540 C.C.). This attribute conforms to the clause found in the disposable portion, towit: ‘of any nature and under any title whatsoever which I may possess at my death’. The usufruct expires at the death of the usufructuary (Article 606, C.C.). This harmonizes with the clause found in the disposable portion, towit: ‘during her life’. The usufructuary may enjoy by himself, or lease, or even given (sic) away this right. (Article 555, C.C.). This is in accord with the clause found in the disposable portion, towit: ‘for her to do with, enjoy and dispose with as she pleases and as a thing belonging to her’. A usufruct has the elements of perfect ownership, excepting that it terminates at the death of the usufructuary. The fact that the testator granted the legatee the right to do with the property ‘as a thing belonging to her’ must be construed and limited to the time covered by the usufruct.
“The intention of the testator is to be ascertained and his dispositions interpreted so as to be made effectual if possible without departing from the proper significance of the terms employed. Roy vs. Latiolas, 5 Annual 552, Michel vs. Beale, 10 La.Ann. 352.
“By interpreting the will as meaning that the testator intended to give the legatee the enjoyment and usufruct of his property, all of the provisions of the disposable portion of the will are observed, respected and harmonized. By interpreting the will as meaning that the testator intended to give the legatee complete title to all of his property means that the term ‘usufruct’ loses its significance. Such an interpretation makes the dispositions contradictory, causes the latter to supersede the former, and is a strained interpretation.”
After full consideration of all applicable rules of interpretation, we are impelled to the view that the only construction which will give effect to all the terms of decedent’s will is that employed by our esteemed brother below, namely, that the bequest conveyed testator’s widow a usu-fruct only. The ambiguity relied upon by appellants to admit extrinsic evidence of testator’s intent arises only if the phrase “to do with, enjoy and dispose of as she pleases and as a thing belonging to her” is deemed to modify the word “property” rather than the term “usufruct”. To adopt this interpretation is to literally write the word “usufruct” out of the testator’s will and achieves the anomalous result of making parol evidence admissible by rejecting the interpretation which would give effect to all the terms of the testament.
*100 We believe such a conclusion to be contrary to the established rule that every word of a testament must be given effect if such can be done without defeating the general purpose of the testator as gathered from the entire instrument. Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Lambert, 210 La. 636, 28 So.2d 1; Succession of Kamlade, 232 La. 275, 94 So.2d 257.
The trial court admitted the parol testimony, including hearsay evidence, subject to defendants’ objections, to provide a complete record on appeal. The lower court, however, had no occasion to determine the merits of the controversy in view of its decision sustaining appellees’ plea of res adjudicata.
Accordingly, we hold the parol testimony offered by appellant inadmissible inasmuch as its relevancy must be predicated upon a rejection of that interpretation which gives effect to all the terms of the testament, which result is contrary to established jurisprudence. It follows that the aforesaid objectionable evidence must be ultimately disregarded.
Appellees having filed no answer to the instant appeal, and the issues raised by their reconventional demand having been apparently abandoned, this aspect of this controversy is deemed waived and passes from our consideration.
For the foregoing reasons, it is ordered, adjudged and decreed the judgment of the lower court is reversed insofar as it sustained defendants’ plea of res adjudicata as to those heirs of decedent Benjamin Dumesnil not claiming herein through Dolzie Lagrange.
It is further ordered, adjudged and decreed that the judgment of the trial court rejecting appellants’ demands and recognizing defendants as owners of subject property is affirmed.
Amended and affirmed. Appellants to pay all costs of these proceedings.